United States Court of Appeals,

Eleventh Circuit.

No. 93-8843.

UNITED STATES of America, Plaintiff-Appellee,

v.

Lenzy REESE, Jr.; Mary Johnson, a/k/a "Lady Red"; James O'Bryant, a/k/a "Boo-Boo"; Tyrone Davis; Benjamin LaShawn Cooper; Lucious Johnson, a/k/a "Humpy"; Pamela Cooper; Willie Norton; Lester Bell, Defendants-Appellants.

Oct. 26, 1995.

Appeals from the United States District Court for the Southern District of Georgia. (No. 5:92-00029-CR), Anthony A. Alaimo, Judge.

Before HATCHETT, DUBINA and BLACK, Circuit Judges.

HATCHETT, Circuit Judge:

The nine appellants in this criminal appeal raise numerous issues challenging their convictions and sentences for participation in a drug trafficking conspiracy. With the exception of one sentencing issue, we find that all of the appellants' contentions lack merit and do not warrant discussion. The one issue requiring discussion is whether the district court misapplied section 1B1.3 of the United States Sentencing Guidelines in attributing quantities of cocaine to four of the appellants: Lenzy Reese, Jr., Lester Bell, Tyrone Davis, and Mary Johnson. [1] We affirm the convictions, vacate the sentences, and remand for resentencing.

BACKGROUND

[1] In addition to challenging the district court's application of the guidelines, the four appellants challenge the accuracy of the district court's factual findings. An additional appellant, James O'Bryant, also makes this contention. We find that these contentions lack merit and do not warrant discussion.

In the late 1980s and early 1990s, Eugene Edmond led a drug trafficking organization in Waycross, Georgia. Reese, Bell, and Davis were "street-level" dealers for Edmond's organization. Johnson was married to Edmond's partner. The organization used Johnson's house as a storage and distribution center for cocaine.

On April 16, 1993, a jury convicted the appellants of conspiring to distribute controlled substances in violation of 21 U.S.C. § 846.[2] The United States Probation Office then prepared a presentence investigation report (PSR) for each of the appellants. Each PSR included a determination of the amount of cocaine attributable to each of the appellants under the Sentencing Guidelines. In making these determinations, the PSRs calculated that the Edmond conspiracy distributed approximately one kilogram of crack cocaine and three ounces of cocaine hydrochloride per month. The PSRs then multiplied this figure to the number of months each appellant was involved in the Edmond conspiracy to arrive at an overall determination.

The appellants objected to the determinations in their PSRs. In response, the probation office prepared an addendum to each PSR. The addenda rejected the appellants' objections and adhered to the original determinations. Subsequently, in June 1993, the district court held individual sentencing hearings for each of the appellants.

At Reese's sentencing hearing, defense counsel objected to the PSR's assertion that Reese had participated in the Edmond

_____

[2]The jury also convicted Johnson of the substantive offense of possessing a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

conspiracy for five months. Counsel contended that Reese "should be attributed with the amount of cocaine that would be applicable for a three-month period as opposed to a five-month period." The district court overruled Reese's objection and adopted the finding contained in the addendum to his PSR, which stated:

> According to Eugene Edmond, Reese was a distributor for his organization from May, 1991 to September, 1991. Even though Reese may have personally distributed only one to two ounces of crack cocaine per week for Edmond, he should be held accountable for the entire quantity distributed by the Edmond organization based on his knowledge of the organization. Reese knew that ... others were also selling quantities of crack cocaine for Eugene Edmond. As such, pursuant to U.S.S.G. § 1B1.3 (relevant conduct), the defendant should be held accountable for all controlled substances distributed by the Edmond organization during the period of time in which Reese was a member of the Edmond organization.

The district court ultimately sentenced Reese to life imprisonment.

At Bell's sentencing hearing, his counsel objected to the PSR's determination that Bell worked for Edmond for seven months and was therefore accountable for seven kilograms of crack cocaine. Counsel contended that Bell worked for Edmond for less than five months, and therefore, was only accountable for less than five kilograms of crack cocaine. In response to Bell's objection, the district court adopted, with one exception, the finding in the addendum to his PSR. The addendum stated:

> The probation officer ... interview[ed] Eugene Edmond who identified the defendant as having been employed in the organization from June, 1991, through January, 1992. Edmond acknowledges that his organization dealt at least one kilogram of crack cocaine and three ounces of cocaine hydrochloride per month. Because of Bell's knowledge of the Edmond organization and the fact that his (Bell's) activities were in furtherance of the criminal conspiracy, the defendant is attributed with at least seven kilograms of cocaine hydrochloride.

The district court took exception with the seven-kilogram total; instead, it found that Bell was only responsible for "in excess of

five kilos."  The district court ultimately sentenced Bell to 360 months of imprisonment.

At Davis's sentencing hearing, his counsel objected to the quantity attributed, arguing that Davis had no "knowledge of any part of [Edmond's] organization."  The district court overruled the objection and adopted the finding in the addendum to Davis's PSR, which stated:

> [A]lthough the defendant worked under the direction of Cedric Smith, he was still a part of the Edmond organization. According to Eugene Edmond, Tyrone Davis was fully knowledgeable of the scope and extent of the Edmond organization and participated in the distribution of cocaine over an extended period of time.  The cocaine distributed by Davis was cocaine provided to Cedric Smith through Eugene Edmond.  Based on the knowledge that Davis had of Smith's role in the Edmond organization, Davis is attributed with the amount of drugs attributed to Smith during the defendant's six month period of involvement.  Since Smith was culpable for six kilograms of crack cocaine and 18 ounces of cocaine hydrochloride during the six month period, Tyrone Davis is accountable for the same.

The district court then sentenced Davis to 360 months of imprisonment.

At Johnson's sentencing hearing, counsel challenged the credibility of the evidence indicating that Johnson stored and distributed cocaine.  The district court overruled Johnson's objection and adopted the finding in the addendum to her PSR, which stated:

> [T]he defendant is culpable for 33 kilograms of crack cocaine and 48 ounces of cocaine hydrochloride.  The evidence in this case showed Lucious Johnson and Eugene Edmond stored quantities of crack cocaine and cocaine hydrochloride at the defendant's residence.  According to Eugene Edmond, Mary Johnson would provide Edmond and other members of the conspiracy with quantities of crack cocaine and cocaine hydrochloride to be distributed in the Waycross area. Further, portions of the crack cocaine and cocaine hydrochloride which were stored at the defendant's residence were transported to Douglas, Georgia, by Lucious Johnson to be

distributed in the Douglas area.  Since the defendant stored and distributed quantities of crack cocaine and cocaine hydrochloride to members of the Edmond organization, pursuant to U.S.S.G. § 1B1.3 (relevant conduct), she is held accountable for the entire quantity of controlled substances distributed by this organization.

Ultimately, the district court sentenced Johnson to life imprisonment.

## CONTENTIONS

Appellants contend that the district court did not properly apply the amended version of U.S.S.G. § 1B1.3 in attributing quantities of cocaine to them.[3]  The government responds that the appellants' sentences were correctly calculated under both the old and amended versions of section 1B1.3.

## ISSUE

The only issue we discuss is whether the district court misapplied U.S.S.G. § 1B1.3 in attributing quantities of cocaine to the appellants.

## DISCUSSION

A. Application of section 1B1.3 in drug conspiracies

U.S.S.G. § 2D1.1 sets the base offense level for conspiring to distribute controlled substances.  *See United States v. Butler,* 41 F.3d 1435, 1442 (11th Cir.1995).  Calculating the base offense level under section 2D1.1 "requires a determination of the quantity of illegal drugs properly attributable to a defendant.  This, in

---

[3]Appellants also contend that the district court failed to make *individualized* findings.  *See United States v. Ismond,* 993 F.2d 1498, 1499 (11th Cir.1993).  The district court, however, held individual sentencing hearings and made specific findings for each individual appellant.  Thus, appellants' contention essentially amounts to a legal challenge to the district court's application of section 1B1.3.

turn, requires an assessment of the conduct of others for which a defendant is accountable under section 1B1.3." *Butler,* 41 F.3d at 1442.

Before November 1, 1992, section 1B1.3(a) held defendants accountable for

> all acts and omissions committed or aided and abetted by the defendant, *or for which the defendant would be otherwise accountable,* that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that are otherwise in furtherance of that offense....

U.S.S.G. § 1B1.3(a)(1) (1991) (emphasis added). The commentary to section 1B1.3 clarified the emphasized language: "In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3 comment. (n. 1) (1991). On the other hand, the commentary explained that a defendant was not accountable for the conduct of others "[w]here it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake...." U.S.S.G. § 1B1.3 comment. (n. 1) (1991). This language seemed to indicate that a conspirator was accountable for all reasonably foreseeable conduct, regardless of the extent of the conspirator's agreement to participate in the conspiracy. *See United States v. Studley,* 47 F.3d 569, 574 (2d Cir.1995). Indeed, the commentary provided an

example that supported this interpretation:

> Defendants H and I engaged in an ongoing marihuana importation conspiracy in which Defendant J was hired only to help off-load a single shipment. Defendants H, I, and J are included in a single count charging conspiracy to import marihuana. For the purposes of determining the offense level under the guideline, Defendant J is accountable for the entire single shipment of marihuana he conspired to help import and any acts or omissions in furtherance of the importation that were reasonably foreseeable. He is not accountable for prior or subsequent shipments of marihuana imported by Defendants H or I if those acts were beyond the scope of, and not reasonably foreseeable in connection with, the criminal activity he agreed to jointly undertake with Defendants H and I (*i.e.,* the importation of the single shipment of marihuana).

U.S.S.G. § 1B1.3 comment. (n. 1) (1991). In other words, section 1B1.3 instructed that a conspirator was held accountable for the acts of his coconspirators if: (1) the acts were reasonably foreseeable; *or* (2) the acts were within the scope of the criminal activity he agreed to jointly undertake.

Thus, before November 1, 1992, the law in this circuit governing the application of section 1B1.3 in the context of drug conspiracies was clear. A conspirator was held responsible for all reasonably foreseeable quantities of drugs involved in the conspiracy, regardless of the scope of the defendant's agreement to participate. *See United States v. Andrews,* 953 F.2d 1312, 1319 (11th Cir.), *cert. denied,* 505 U.S. 1210, 112 S.Ct. 3007, 120 L.Ed.2d 882 (1992). For example, in *Andrews,* this court made clear that "street-level" dealers in a conspiracy are not simply responsible for the quantities of cocaine that they agree to sell; rather, they are also responsible for all other reasonably foreseeable quantities distributed in the conspiracy. *Andrews,* 953 F.2d at 1319-23. Moreover, since a finding of reasonable foreseeability meant that the defendant was accountable under

section 1B1.3, courts often did not need to address the scope of the defendant's agreement to participate in the drug conspiracy. *See Studley,* 47 F.3d at 573 ("Our opinions on this portion of section 1B1.3 have primarily focused on the issue of whether conduct was foreseeable to the defendant, and have not directly addressed whether conduct was "jointly undertaken.' ").

On November 1, 1992, a clarifying amendment to section 1B1.3 became effective. *See Butler,* 41 F.3d at 1443 n. 7. Section 1B1.3(a), as amended, provides that a defendant is responsible for:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity[.]

U.S.S.G. § 1B1.3(a). The amendment also included commentary that explains how section 1B1.3 should be applied in cases of jointly undertaken criminal activity, such as drug conspiracies. Application note 2 of the commentary provides:

> In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (*i.e.,* the scope of the specific conduct and objectives embraced by the defendant's agreement). The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.
>
> ....
>
> With respect to offenses involving contraband (including

controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

U.S.S.G. § 1B1.3 comment. (n. 2). Under this commentary, reasonable foreseeability alone is no longer sufficient to establish accountability. Instead, defendants are only accountable for other conduct that was reasonably foreseeable *and* within the scope of the criminal activity that the defendant agreed to undertake. In fact, to illustrate this change, the commentary amended the example that it had previously provided regarding the marijuana importation conspiracy. The example now reads:

(3) Defendants H and I engaged in an ongoing marihuana conspiracy in which Defendant J was hired only to help off-load a single shipment. Defendants H, I, and J are included in a single count charging conspiracy to import marihuana. Defendant J is accountable for the entire single shipment of marihuana he helped import under subsection (a)(1)(A) and any acts and omissions in furtherance of the importation of that shipment that were reasonably foreseeable. ( *See* the discussion in example A(1) above). *He is not accountable for prior or subsequent shipments of marihuana imported by Defendants H or I because those acts were not in furtherance of his jointly undertaken criminal activity* (the importation of the single shipment of marihuana).

U.S.S.G. § 1B1.3 comment. (n. 2) (emphasis added). Thus, even though the conspirator in the example may have reasonably foreseen other shipments of marijuana, he is not accountable for those other shipments because they were not part of the scope of the criminal activity that he agreed to undertake. Application note 2 of the amended commentary also includes five new examples that emphasize this change:

(4) Defendant K is a wholesale distributor of child pornography. Defendant L is a retail-level dealer who purchases child pornography from Defendant K and resells it, but otherwise

operates independently of Defendant K. Similarly, Defendant M is a retail-level dealer who purchases child pornography from Defendant K and resells it, but otherwise operates independently of Defendant K. Defendants L and M are aware of each other's criminal activity but operate independently. Defendant N is Defendant K's assistant who recruits customers for Defendant K and frequently supervises the deliveries to Defendant K's customers. Each defendant is convicted of a count charging conspiracy to distribute child pornography. Defendant K is accountable under subsection (a)(1)(A) for the entire quantity of child pornography sold to Defendants L and M. Defendant N also is accountable for the entire quantity sold to those defendants under subsection (a)(1)(B) because the entire quantity was within the scope of his jointly undertaken criminal activity and reasonably foreseeable. Defendant L is accountable under subsection (a)(1)(A) only for the quantity of child pornography that he purchased from Defendant K because the scope of his jointly undertaken criminal activity is limited to that amount. For the same reason, Defendant M is accountable under subsection (a)(1)(A) only for the quantity of child pornography that he purchased from Defendant K.

(5) Defendant O knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request when he was ill. Defendant O is accountable under subsection (a)(1)(A) for the drug quantity involved on that one occasion. Defendant O is not accountable for the other drug sales made by her boyfriend because those sales were not in furtherance of her jointly undertaken criminal activity (*i.e.,* the one delivery).

(6) Defendant P is a street-level drug dealer who knows of other street-level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and the other dealers share a common source of supply, but otherwise operate independently. Defendant P is not accountable for the quantities of drugs sold by the other street-level drug dealers because he is not engaged in a jointly undertaken criminal activity with them. In contrast, Defendant Q, another street-level drug dealer, pools his resources and profits with four other street-level drug dealers. Defendant Q is engaged in a jointly undertaken criminal activity and, therefore, he is accountable under subsection (a)(1)(B) for the quantities of drugs sold by the four other dealers during the course of his joint undertaking with them because those sales were in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with their criminal activity.

(7) Defendant R recruits Defendant S to distribute 500 grams of cocaine. Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger

quantities of cocaine. As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams, Defendant S is accountable only for the 500 gram amount (under subsection (a)(1)(A)), rather than the much larger quantity imported by Defendant R.

(8) Defendants T, U, V, and W are hired by a supplier to backpack a quantity of marihuana across the border from Mexico into the United States. Defendants T, U, V, and W receive their individual shipments from the supplier at the same time and coordinate their importation efforts by walking across the border together for mutual assistance and protection. Each defendant is accountable for the aggregate quantity of marihuana transported by the four defendants. The four defendants engaged in a jointly undertaken criminal activity, the object of which was the importation of the four backpacks containing marihuana (subsection (a)(1)(B)), and aided and abetted each other's actions (subsection (a)(1)(A)) in carrying out the jointly undertaken criminal activity. In contrast, if Defendants T, U, V, and W were hired individually, transported their individual shipments at different times, and otherwise operated independently, each defendant would be accountable only for the quantity of marihuana he personally transported (subsection (a)(1)(A)). As this example illustrates, in cases involving contraband (including controlled substances), the scope of the jointly undertaken criminal activity (and thus the accountability of the defendant for the contraband that was the object of that jointly undertaken activity) may depend upon whether, in the particular circumstances, the nature of the offense is more appropriately viewed as one jointly undertaken criminal activity or as a number of separate criminal activities.

U.S.S.G. § 1B1.3 comment. (n. 2).

The commentary of section 1B1.3, and its examples, are binding on this court. *See Stinson v. United States,* --- U.S. ----, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Although *United States v. Bush,* 28 F.3d 1084 (11th Cir.1994), did not fully and explicitly discuss this change in the law, it has recently followed the new version of section 1B1.3. In *Bush,* the defendant, who had been convicted of conspiring to distribute cocaine, challenged the quantity of cocaine that the district court attributed to her under the guidelines. This court vacated the defendant's sentence because "the district court found that [the defendant] could

foresee the quantity of drugs distributed by her [coconspirators] without making the critical inquiry as to the scope of criminal activity undertaken by the defendant." *Bush,* 28 F.3d at 1087. *Bush* provides the correct post-amendment interpretation of section 1B1.3 in the context of a drug conspiracy.

B. Application of section 1B1.3 to this case

Generally, a district court's attribution of drugs to a defendant under the guidelines is reviewed under the clearly erroneous standard. *See United States v. Hansley,* 54 F.3d 709, 714 (11th Cir.1995). The issue in this appeal, however, involves purely a legal question: whether the district court misapplied U.S.S.G. § 1B1.3. As a result, our review is *de novo. See United States v. Smith,* 54 F.3d 690, 691 (11th Cir.1995), *cert. denied, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----* (U.S. Sept. 7, 1995) (No. 95-5919).

The district court sentenced the appellants in June 1993. Thus, the amended version of section 1B1.3 applied because the applicable Sentencing Guidelines are those "that are in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a)(4)(A); *see also United States v. Munoz-Realpe,* 21 F.3d 375, 377 (11th Cir.1994) ("the version of the Guidelines in effect on the date of sentencing is applied").

In attributing quantities of cocaine to the appellants, the district court adopted the findings in the addenda to the PSRs. These findings attribute to the appellants all of the cocaine Edmond's organization distributed while the appellants were involved in the Edmond conspiracy. In support of this

determination, the findings only state that the appellants could have reasonably foreseen such distribution.  Thus, the district court did not consider the scope of criminal activity that each appellant agreed to undertake.  The findings with respect to Reese most clearly illustrate this point:

> Even though Reese may have personally distributed only one to two ounces of crack cocaine per week for Edmond, he should be held accountable for the entire quantity distributed by the Edmond organization based on his knowledge of the organization.  Reese knew that ... others were also selling quantities of crack cocaine for Eugene Edmond.  As such, pursuant to U.S.S.G. § 1B1.3 (relevant conduct), the defendant should be held accountable for all controlled substances distributed by the Edmond organization during the period of time in which Reese was a member of the Edmond organization.

Because the findings rest solely on the basis of the appellants' knowledge, it is evident that the district court was under the erroneous impression that the pre-amendment version of section 1B1.3 applied.[4]

Although the appellants objected to the quantities of cocaine attributed to them, they did not mention the change in the circuit's law due to the amendment or any of the amended commentary.  It is, however, obvious that the appellants have not been sentenced under the amended guideline and the teachings of *Bush*.  Because the appellants objected to the amounts of cocaine attributed to them, their objections were sufficient to preserve the issue for appellate review.  Consequently, we remand the case to the district court for resentencing.

---

[4]In its brief, the government argues that even though the district court relied on the pre-amendment version of the guidelines, any error was harmless.  An incorrect sentence, properly objected to, will seldom constitute harmless error, especially when the difference is in terms of years.  Thus, we reject the harmless error argument.

CONCLUSION

For the foregoing reasons, we affirm the convictions of all nine appellants, but we vacate the sentences imposed upon Lenzy Reese, Jr., Lester Bell, Tyrone Davis, and Mary Johnson.

CONVICTIONS AFFIRMED; SENTENCES VACATED and REMANDED.