PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————————

No. 95-8288

———————————————————

D. C. Docket No. 1:93-CR-506-3-GET

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS J. WORD; RICHARD A. ANDERS;
CALVIN L. WORD; DAWN DAILEY,

Defendants-Appellants.

———————————————————

Appeals from the United States District Court
for the Northern District of Georgia

———————————————————

(November 21, 1997)

Before EDMONDSON and DUBINA, Circuit Judges, and LIMBAUGH*, Senior
District Judge.

_____

* Honorable Stephen N. Limbaugh, Senior U.S. District Judge for the Eastern
District of Missouri, sitting by designation.

EDMONDSON, Circuit Judge:

The four Defendant-appellants in this appeal raise many issues challenging both their convictions and their sentences for conspiracy to commit mail fraud, wire fraud, and securities fraud in violation of federal law. With three exceptions, we conclude that all of these challenges lack merit.

These arguments have merit: (1) Defendant-appellant Dawn Dailey's ("Dailey") challenge to the district court's exclusion of her evidence about her relationship with Calvin Word; (2) Defendant-appellant Richard Anders's ("Anders") challenge to his sentence, which attributed responsibility for the entire loss caused by the conspiracy to Anders despite his joining the conspiracy late; and (3) Appellants' challenge to the district court's failure to determine their ability to pay the restitution ordered by that court.[1]

Background

---

[1]The government concedes that remand is necessary for a determination by the district court. See United States v. Davis, 117 F.3d 459, 463 (11th Cir. 1997) (A court must determine a defendant's ability to pay before restitution can be ordered but specific factual findings are not required.). Because the law is clear on this issue and the government concedes it, we will say no more about restitution.

All Defendant-appellants -- Calvin Word, Thomas Jefferson Word, Dawn Dailey, and Richard Anders -- were involved with First Alliance Securities ("FAS"), a small brokerage firm dealing in penny stocks. The firm was established by Calvin Word, who hired his nephew Thomas Jefferson Word as a manager. Calvin also hired Dawn Dailey[2] and Richard Anders as brokers. Some of the brokers hired by FAS, including Anders, were not properly registered traders and used the registration numbers of other brokers, including Jeff Word's registration number.

In 1994 Defendant-appellants were convicted on many counts for crimes related to a securities fraud scheme. This scheme involved high-pressure, fraudulent sales tactics -- such as guaranteed returns -- and unauthorized trading.

---

[2]**Dawn Dailey and Calvin Word were romantically involved during the operation of FAS, and they were married after the acts constituting the conspiracy occurred.**

3

The trading at FAS followed a "wave" pattern,[3] resulting in the appearance that customers were realizing profits. The profits were illusory, however, because FAS brokers did not allow customers to sell their stocks for a cash return. Instead, the customers were manipulated into investing the proceeds into more penny stocks. The brokers made money on commissions for these trades and through a system of insider trading.

## Discussion

Dawn Dailey

---

[3]The "wave" pattern involved brokers having one group of customers buy stock "A" in large quantities, despite the individual customers' needs. This same group of customers then would sell stock "A" back to FAS for a higher price, and FAS would roll the "proceeds" into stock "B." Stock "A" would then be in FAS's inventory at the higher price "paid" by FAS (FAS actually paid nothing because it simply rolled the alleged "proceeds" into another stock); and it could be sold to another group of customers at that higher price. Brokers would continue to conduct these transactions making the price of the stock higher at each "wave" due to manufactured demand for the stock. The investors at the end are then left with a very high- priced stock for which there is no market.

4

Dawn Dailey appeals claiming that she was denied the right to a fair trial because she was -- pursuant to pre-trial motions by both the government and Calvin Word -- permitted to introduce no evidence of physical and emotional abuse by Calvin Word and to introduce no evidence of Battered Woman's Syndrome. At trial, the government argued that the jury could infer that Dailey willfully and knowingly committed fraud because she was romantically involved with the man responsible for the fraudulent scheme's creation -- Calvin Word.

Very little evidence was actually admitted about the relationship between Calvin Word and Dawn Dailey. But based only upon the introduction, by the government and Calvin Word, of the fact that the two were romantically involved during the conspiracy and subsequently married, the government argued that an inference of closeness and confidentiality should be drawn. Dailey says the jury was not allowed to hear about the other side of the relationship -- a relationship the government insisted on stressing to support a conviction.

During closing argument the government contended that the defense that Dailey and Calvin did not discuss the intricate details of the conspiracy was contrary to common sense. That closing argument included:

5

Now, remember who's the one who taught
Ms. Dailey how to sell?  Calvin Word.  Who's
the one she went home with every day?  Calvin
Word.  Who's the one she went to work with
before she was at First Alliance and after she
was at First Alliance?  That's Calvin Word.

. . .

In the case of Ms. Dailey and Mr. Word, they
shared a home, job, transportation.  They
went on vacation together, I believe.

Ms. Singer says it's improper for you to draw
any inference because they were boyfriend
and girlfriend.  I don't think the court is going
to instruct you on that.  It seems entirely proper
and entirely consistent, as you know in your
lives, day-do-day[sic] common sense lives, that
people who go on vacation, work together, live
together, spend all their time together, are going
to have a pretty good idea about what's going
on in the workplace when they work together.

1.  Expert Testimony

Dailey attempted to admit expert psychiatric testimony that she suffered

from "Battered Woman's Syndrome" and, thus, did not and could not have

had the requisite mental intent or knowledge to carry out the scheme.

Federal Rule of Criminal Procedure 12.2 specifically addresses the

6

presentation of expert testimony about the mental state of a defendant, when mental state bears upon the issue of guilt.

Under this rule, notice must be provided that such evidence potentially will be used at trial. Also, the notice must be given before the time for the filing of pretrial motions, unless otherwise provided by the trial court. Fed.R.Crim.P. 12.2(b); see generally United States v. Piccinonna, 885 F.2d 1529, 1536 (11th Cir. 1989). Notice was not timely given by Dailey; and, thus, the district court properly excluded the evidence. Fed.R.Crim.P. 12.2(d); see also United States v. Buchbinder, 796 F.2d 910, 914 (7th Cir. 1986). The exclusion by the district court of expert testimony about Battered Woman's Syndrome was not error.

## 2. Lay testimony

Dailey also argues that, even if expert testimony was properly excluded, it amounted to abuse of discretion -- violating her right to a fair trial -- to exclude lay testimony of the abusive nature of the relationship or, at least, of the stormy nature of the relationship between Dailey and Word. This evidence, she argues, was needed to tell the other side of the story about the

relationship and to refute the government's contentions that the jury, in the light of the romantic nature of the pertinent relationship, should infer that Dailey knew all that Word knew; the government made the nature and success of the Words' relationship an issue by asking the jury to draw this inference.

We review evidentiary rulings for abuse of discretion. See United States v. Ramos, 933 F.2d 968, 974 (11th Cir. 1991). In this case, there was an abuse of discretion.

"A defendant's right to a fair trial is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." Id. A criminal defendant has the right to present witnesses in his own defense. Boykins v. Wainwright, 737 F.2d 1539, 1544 (11th Cir. 1984). In this case, Dawn Dailey was not afforded the opportunity to present evidence to counter the government's argument that an inference of confidence (with a complete exchange of information) could be drawn from Dailey's relationship with Calvin Word: that she knew of the scheme to defraud investors and willfully participated in that scheme.

As established before trial -- when the district court was considering the motion in limine to exclude evidence of problems in the Words' relationship --

Dawn Dailey Word, in effect, would have testified that Word physically and emotionally abused her and would have testified that Word did not share much information with her.[4]  In addition, other witnesses who were present at FAS could have testified about the emotional and verbal abuse that Dailey suffered -- tending to show that Calvin Word wished Dailey to have no opinions of her own and to trust him blindly.

The government's trial strategy made this defense evidence highly significant.  With the district court's exclusion of the proposed testimony of

---

[4]**Dawn Dailey specifically represented she would have testified that, after becoming involved with Calvin Word, she had no right to an opinion of her own-- that she adopted, accepted and believed anything Word told her; she knew nothing of commodities markets except what Word told her; and she had always been under his control.  She was told by Calvin Word "[t]hat she should follow his instructions and listen  and believe those in management."  On "[o]ne occasion when she spoke with him at First Alliance, he was so enraged that she bothered him, he threatened to have her sent to the Mobile Alabama office."  She also would have testified that she lived through repeated physical attacks and emotional abuse, at home and at work -- including being "pushed to the ground by Calvin Word in a rage" when she was pregnant and being "humiliated . . . in front of Jeff Word and others."  In addition, she would have testified that Word "kept very much to himself, and spent little quality time with her" during the pertinent period.**

abuse (or similar evidence about a less-than-storybook relationship) Dailey had no means to defend against the government's contentions; and the jury did not hear the whole story about the relationship. <u>See</u> <u>United States v. Cohen</u>, 888 F.2d 770, 776 (11th Cir. 1989) ("if there is not other practical means to prove the point, then the need factor points strongly toward receipt of such evidence") (citations and quotations omitted). All the jury was told was that Dawn Dailey and Calvin Word were romantically involved from the beginning of the scheme at FAS (and that they ultimately became husband and wife); and because of that relationship, Word and Dailey must have shared everything, including knowledge of the crimes.

During trial, the government was able to argue inferences favorable to the prosecution based upon the romantic relationship between the two co-defendants while the defendant, Dailey, was prohibited from introducing evidence that told a different story about the relationship and that might have contradicted or undercut those inferences. Because the government's strategy made the romantic relationship material, that exclusion amounted to an abuse of discretion and a reversible error. Thus, we vacate the conviction against Dawn Dailey and order a new trial in accord with this opinion.

10

<u>Richard Anders</u>

Anders appeals the district court's sentencing of him based upon the amount of loss attributable to the entire conspiracy. Anders did not join the conspiracy until several months after its inception. The amount of loss determination is made under United States Sentencing Guideline §1B1.3, which sets forth what "relevant conduct" can be attributed to the defendant as reasonably foreseeable conduct for which he can be held accountable. The Sentencing Commission also includes notes to aid in the application of the guidelines. These notes, and amendments thereto, are binding on this court. <u>United States v. Reese</u>, 67 F.3d 902, 908 (11th Cir. 1995) (citing <u>Stinson v. United States</u>, 508 U.S. 36 (1993)).

Anders challenges the district court's determination that the entire conspiracy, and the loss resulting from it, was attributable to him. He claims this was a misapplication of the guidelines in the light of the amended application notes. <u>See</u> U.S.S.G. §1B1.3 application note 2. A misapplication of the guidelines is reviewed <u>de</u> <u>novo</u> by this court. <u>Reese</u>, 67 F.3d at 908.

The relevant application note, note 2 of U.S.S.G. § 1B1.3, provides: "A defendant's relevant conduct does not include the conduct of members of a

11

conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." U.S.S.G. §1B1.3, application note 2. Although this note was an amendment to prior commentary to the sentencing guideline provision, it is still to be used in applying the guideline because it merely clarified the guideline properly applied to Anders. See Reese, 67 F.3d at 906-08.

The district court erred when it used acts of the conspiracy occurring before Anders's involvement to calculate his sentence.

## Conclusion

We vacate Anders's sentence and remand for sentencing in accord with this opinion. We also vacate the sentence and remand for all Appellants for a determination of their abilities to pay restitution. In addition, we vacate Dailey's conviction and her sentence and direct that she be given a new trial. We affirm in all other respects.

AFFIRMED in part, VACATED and REMANDED in part.