[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 7, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-13366

_____

D.C. Docket No. 02-00200-CR-J-20

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICE DALIBERTI HURN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 7, 2004)**

Before TJOFLAT, RONEY and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

I.

The defendant, Patrice Hurn, was an employee of the United States Postal Service who painted as a hobby. She had a website advertising her painting services. On December 4, 2000, she submitted a claim for disability due to carpal tunnel syndrome that she alleged was caused by her job. Although her claim was initially accepted, in May, 2001, postal inspectors opened an investigation to examine the possibility that she had committed workers' compensation fraud. In August, the Postal Service offered her a new job to accommodate her disability, but she sent them a letter stating that she did not have the physical capacity to perform the duties of that job, and that it was too far away for her to drive to.

As part of the ongoing investigation of Hurn, two undercover postal inspectors separately hired her at different times to paint pictures of their pets. They paid her a total of approximately $500; she gave one of the agents a professionally printed receipt. Shortly after each transaction, the postal service sent her a "1032 Form" in connection with her workers' compensation benefits, which required her to report any outside income she had received. Both times, she failed to report her income from her paintings on the forms.

On September 18, 2002, a federal grand jury indicted Hurn for three counts of violating 18 U.S.C. § 1920, which prohibits making false statements in

2

connection with federal worker's compensation programs. Count I was based on her letter to the postal service claiming she was unable to perform the duties of the new job which she had been offered. Counts II and III were for the two 1032 Forms on which she neglected to report her income from painting. Hurn pled not guilty. She was tried before a jury, convicted on all counts, and sentenced to five months' imprisonment.

Part II of this opinion considers Hurn's challenge to the adequacy of the district court's jury instructions. Part III turns to her claim that the district court violated her right to a fair trial by excluding a critical defense witness. Finally, Part IV considers the sufficiency of the evidence to support her convictions under Counts II and III.

## II.

Hurn first contends that the district court erred in failing to instruct the jury to determine whether her false statements actually led to her receiving over $1,000 in workers' compensation benefits. 18 U.S.C. § 1920 provides, "Whoever knowingly and willfully . . . makes a false, fictitious, or fraudulent statement or representation . . . in connection with the application for or receipt of compensation or other benefit or payment [under a federal program] shall be guilty of perjury." The statute goes on to state,

> [O]n conviction thereof [the defendant] shall be punished by a fine under this title, or by imprisonment for not more than 5 years, or both; but if the amount of the benefits falsely obtained does not exceed $1,000, such person shall be punished by a fine under this title, or by imprisonment for not more than 1 year, or both.

Id.

The maximum sentence to which a § 1920 defendant is subject depends on the amount of benefits she "falsely obtained." In Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Under Apprendi, for a defendant to be subject to a 5-year rather than a 1-year maximum sentence under § 1920, the jury must determine that the amount of benefits she "falsely obtained" exceeds $1,000. In the instant case, the court instructed the jury that it could not convict unless "the amount of benefits falsely obtained [by Hurn] exceeded $1,000." This instruction satisfies Apprendi's due process requirements.

Hurn maintains that this instruction was insufficient, however, because it did not require the jury to find that a causal link existed between her false statement and her receipt of more than $1,000 in workers' compensation benefits. She argues that the district court should have asked the jury whether, "because of

4

the false statement or report, [Hurn] obtained more than $1,000 in federal worker's compensation funds." We agree with Hurn that the plain meaning of the statute requires that the jury find such a causal link for a defendant to be subject to the statute's enhanced penalty regime. We believe that the instructions given, however, satisfy this requirement. The court asked the jury whether the amount of benefits "falsely obtained" exceeded $1,000. A reasonable juror would be likely to conclude that a benefit is obtained "falsely" if it is obtained as a result of a fraudulent or misleading statement or omission. Therefore, the instruction as given fairly includes the causation requirement to which the defendant points. Moreover, because the instruction was essentially lifted from the text of the statute, it would be almost impossible for us to conclude that it did not convey the statute's requirements. Consequently, we reject Hurn's challenge to the jury instructions.

## III.

Hurn's next claim is that the district court's exclusion of Attorney Paul Felser as a defense witness violated her constitutional right to a fair trial. Hurn sought to have Felser testify that, under the "concurrent dissimilar employment" doctrine, her benefits would not have been reduced if she had truthfully reported her income from painting on the 1032 Forms. Hurn claims that, because her

benefits would have remained the same whether she lied or told the truth about her painting income, she had no reason to deliberately or willfully defraud the government. Had the jury heard this doctrine, it would likely have concluded that the omission of this information from the form was the result of either an oversight or misunderstanding of the forms.

The Sixth Amendment to the United States Constitution guarantees defendants the right to have "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Implicit in this right—as well as in the basic notion of "due process of law" in general, see U.S. Const. amend V—is the idea that criminal defendants must be afforded the opportunity to present evidence in their favor. See Specht v. Patterson, 386 U.S. 605, 610, 87 S. Ct 1209, 1212, 18 L. Ed. 2d 326 (1967) ("Due process . . . requires that [the defendant] . . . have an opportunity to be heard . . . and to offer evidence of his own."); United States v. Ramos, 933 F.2d 968, 974 (11th Cir. 1991) ("A criminal defendant's right to present witnesses in his own defense during a criminal trial lies at the core of the fifth and fourteenth amendment guarantees of due process.").

In assessing a defendant's claims under the Fifth and Sixth Amendments to call witnesses in her defense, we engage in a two-step analysis. We first examine whether this right was actually violated, then turn to whether this error was

"harmless beyond a reasonable doubt" under Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967).  Because we conclude that the district court did not violate Hurn's constitutional right to call witnesses on her behalf, we need not reach the second step of this analysis.

A district court's exclusion of a defendant's evidence violates these Compulsory Process and Due Process guarantees in four circumstances.[1]  First, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense.[2]  Second, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain.  Third, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or

---

[1]  We do not address the closely related question of when a district court's restrictions on a defendant's cross-examination of a prosecution witness violates the Sixth Amendment Confrontation Clause.  See U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .").

[2]  The modifier "generally" is used because otherwise relevant evidence may sometimes validly be excluded under the Rules of Evidence.  Nevertheless, the fact that a particular rule of evidence requires the exclusion of certain evidence is not dispositive, as particular applications of a generally valid rule may unconstitutionally deny a defendant his rights under the Compulsory Process or Due Process Clauses.  See Knight v. Dugger, 863 F.2d 705, 729 (11th Cir. 1988) (noting that a conviction must be reversed where there is "either clear error by the trial courts in their evidentiary rulings or compelling reasons for exceptions to state evidentiary or procedural rules").

affirmative defense, but that could have a substantial impact on the credibility of an important government witness. Finally, a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently. We review each of these standards in turn.[3]

## A.

The most obvious component of a defendant's Fifth and Sixth Amendment right to present evidence in his favor is to present evidence that has a direct bearing on a formal element of the charged offense. "A defendant's right to a fair trial is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." United States v. Ramos, 933 F.2d 968, 974 (11th Cir. 1991); see also Washington v. Texas, 388 U.S. 14, 23, 87 S. Ct. 1920, 1925, 18 L. Ed. 2d 1019 (1967) ("[T]he petitioner in this case was denied his right

---

[3] It is easier for a defendant to obtain a reversal on direct appeal on the basis of improperly excluded evidence than it is for a defendant to obtain a writ of habeas corpus on the same ground. "It is fundamental that federal courts possess only limited authority to consider state evidentiary rulings in a habeas proceeding by a state prisoner. Our inquiry must be limited to determining whether the evidentiary ruling was so prejudicial . . . as to deny fundamental fairness to the criminal trial, thus violating the due process clause." Phillips v. Wainwright, 624 F.2d 585, 588 (5th Cir. 1980) (quotation marks and citation omitted).

to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness . . . whose testimony would have been relevant and material to the defense."). This reasoning applies with equal force to directly proving the existence of an element of an affirmative defense. See Boykins v. Wainwright, 737 F.2d 1539, 1545 (11th Cir. 1984) (holding that expert testimony directly relevant to establishing an insanity defense "clearly meets the constitutional standard of materiality in the sense of a 'crucial, critical, highly significant factor.'"); see also United States v. Till, 609 F.2d 228, 229 (5th Cir. 1980)[1] (reversing conviction where evidence was excluded that was "highly relevant and material to the entrapment defense"); United States v. Herrera, 600 F.2d 502, 505 (5th Cir. 1979) (reversing district court's exclusion of evidence that the defendant had been threatened because such evidence was directly relevant to the defendant's affirmative defense of duress). In applying this rule, we have recognized that "if there is simply no other practical means to prove the point, then the need factor points strongly toward receipt of such evidence." United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989) (quotations and citation omitted).

---

[1] Decisions of the Fifth Circuit handed down prior to September 30, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Hurn is unable to articulate a constitutional violation under this theory. She contends that Felser was going to testify about her continued eligibility for benefits under the "concurrent dissimilar employment" doctrine. None of the elements of 18 U.S.C. § 1920 directly address a defendant's continued eligibility for benefits. Moreover, Hurn did not offer an affirmative defense to which this testimony would be directly material. Consequently, Hurn must advance a different theory under which the court wrongfully excluded this testimony.

B.

A defendant also has the right to introduce evidence that is not directly relevant to an element of the offense, but that makes the existence or non-existence of some collateral matter somewhat more or less likely, where that collateral matter bears a sufficiently close relationship to an element of the offense. In United States v. Sheffield, 992 F.2d 1164 (11th Cir. 1993), for example, the defendant was an Air Force employee convicted of embezzling U.S. Government property because he ordered his subordinates to produce fishing lures for his personal use. He attempted to demonstrate that this was part of a legitimate, authorized custom on the base of making retirement presents for high-ranking civilian and military officials. The district court excluded all evidence concerning the existence of such a custom.

Evidence proving that such a custom existed was not directly relevant to any of the elements of embezzlement. Nevertheless, the existence of the custom was a collateral matter that was itself relevant to the mens rea element of the offense. That is, if the defendant was acting pursuant to an established, authorized custom, then he was not intentionally doing anything wrong. Id. at 1170 ("Evidence of the gift-making custom was relevant to [the defendant's] state of mind when he ordered the production of fishing lure molds."). Consequently, exclusion of the evidence violated the defendant's rights. Id.

Similarly, in United States v. Lankford, 955 F.2d 1545 (11th Cir. 1992), the defendant was convicted of filing false tax returns. We reversed, however, because the district court had prevented a defense expert from testifying that the defendant's belief in the legality of his acts was reasonable. To be convicted of filing false tax returns, the government had to prove that the defendant acted "willful[ly];" that is, that he knew he was breaking the law. Id. at 1550. We recognized, however, that it would be difficult if not impossible for a defendant to introduce direct evidence specifically about his mental state. Consequently, he had to focus on providing circumstantial evidence concerning collateral matters, such as the reasonableness of his beliefs, from which the jury could infer what his mental state was. The more untenable his belief that he was

11

acting legally, the less likely he actually held it. Id. at 1550-51. Because proof demonstrating the "reasonableness" of the defendant's beliefs was therefore indirectly relevant to an actual element of the offense ("willfulness") through a short chain of inferential reasoning, the defendant had the constitutional right to introduce it. Id. at 1551 ("By disallowing expert testimony on the gift/income issue, the trial court deprived [the defendant] of evidence showing that his asserted state of mind was reasonable. Accordingly, we hold that the exclusion of expert testimony on this issue was error.").

A defendant also has the constitutional right under this theory to introduce evidence concerning a collateral matter where the government attempts to use that collateral matter as the basis for securing a conviction. In United States v. Word, 129 F.3d 1209 (11th Cir. 1997), for example, the government had introduced evidence that the defendant and her husband had a close relationship (a collateral matter). It invited the jury to infer, from the existence of this close relationship, that the defendant's husband had shared with her information about his criminal activities, causing her to have actual knowledge about them (an element of the offense with which she was charged). Id. at 1212. The defendant wished to rebut that inference by testifying that her husband "physically and emotionally abused her and . . . that [he] did not share much information with her." Id. We held,

12

"With the district court's exclusion of the proposed testimony of abuse (or similar evidence about a less-than-storybook relationship) [the defendant] had no means to defend against the government's contentions; and the jury did not hear the whole story about the relationship." Id. We concluded:

> During trial, the government was able to argue inferences favorable to the prosecution based upon the romantic relationship between the two co-defendants while the defendant . . . was prohibited from introducing evidence that told a different story about the relationship and that might have contradicted or undercut those inferences.

Id. at 1213. Consequently, we vacated the conviction and ordered a new trial based on the exclusion of evidence concerning this collateral matter.

Conversely, where the proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense, whether direct or indirect, a defendant has no right to introduce that evidence and a district court may properly exclude it. See Ramos, 933 F.2d 968, 974 (11th Cir. 1991) (upholding district court's refusal to allow defendant to introduce evidence of a conversation between a confidential informant and allegedly corrupt DEA agents in New York because that testimony "did not link any improprieties between the [informant] and New York DEA agents to the [defendant] or the Miami DEA agents" who conducted the investigation of the defendant). Moreover, a district court may exclude evidence where the relationship between the evidence and the

13

element of the offense or affirmative defense at issue is simply too attenuated. That is, there comes a point—and a district court is perhaps in the best position to judge this—when the chain of inferences linking evidence and the legally relevant point to be proven is simply too long, dubious, or attenuated to require that the evidence be introduced. See United States v. Gonzalez, 71 F.3d 819, 836 (11th Cir. 1996) (upholding district court's decision to exclude testimony of an accident reconstruction expert because "whether appellant rammed the officers' car, or vice versa, was simply not adequately material to the crimes for which appellant stood charged at trial").

Hurn is unable to prevail under this theory because there is a crucial break in her proposed chain of reasoning. The existence of the "concurrent dissimilar employment" doctrine (a collateral matter) could only have reduced her motive to lie when filling out the documents (a factor which goes to the mens rea element of the offense) if she knew about it. Hurn does not argue on appeal that she had consulted with Felser prior to filling out the forms, and did not offer any other evidence to suggest that she was aware of the doctrine. Indeed, if it would take an expert's testimony to make a jury aware of the "concurrent dissimilar employment" doctrine, it is highly unlikely that she knew of it at the time she filled out the forms. Consequently, she failed to offer the vital link in the chain

that would have made that collateral matter relevant to an element of the charged defense.

## C.

A third facet of the defendant's right to present evidence is to introduce evidence that, while not directly or indirectly relevant to an element of an offense or affirmative defense, attacks the credibility of important government witnesses. In United States v. Davis, for example, we reversed a conviction because the trial court had excluded evidence, where

> [t]he purpose of the proffered evidence was to discredit the key government witness . . . without whom the government would have had no case against [the defendant]. . . . No other impeachment evidence, except for [the key government witness'] admission of prior felony convictions and the circumstances surrounding his cooperation with the prosecution, was admitted. . . . The excluded evidence here would have gone further than character evidence. The two witnesses would have testified to [the witness'] reputation for lacking truth and veracity and that they would not believe him under oath.

639 F.2d 239, 244-45 (5th Cir. 1981). Similarly, in Mills v. Estelle, 552 F.2d 119, 122 (5th Cir. 1977), we held that a court should have permitted the defendant to introduced certain impeachment evidence because it "could have led the jury to draw an inference of bias" concerning the government's witness. Because Hurn's proffered testimony did not concern the credibility of a government witness, this doctrine is inapplicable.

15

D.

In some cases, the government's selective presentation of entirely truthful evidence can cast a defendant in an inaccurate, unfavorable light, or make entirely legitimate, normal, or accepted acts appear unusual or suspicious. In these situations, the defendant has the right to introduce additional evidence to dispel this unjustified taint, even if that evidence does not directly or indirectly bear on a particular element of an offense.

For example, in United States v. Todd, 108 F.3d 1329 (11th Cir. 1997), the defendant was convicted of embezzling from an employee retirement fund plan. The government demonstrated that the defendant, along with his family members who worked for the company, received extremely high salaries. It relied on this evidence to show that the defendant "was motivated by greed and selfishness to fraudulently deprive the employees of the Plan's funds." Id. at 1333. Technically, a defendant's motives or character are irrelevant to a jury's determinations; nevertheless, as a practical matter, they cannot help but color the jury's verdict. Because the government had called these considerations into question through the use of accurate, yet nonetheless potentially misleading evidence, the defendant had the right to "complete the picture." We reversed the defendant's conviction because if he had been permitted "to introduce evidence of large employees'

16

salaries and benefits [for <u>all</u> employees, not just his family members], the evidence . . . could have put quite a different spin on the question of [the defendant's] intent and actions." <u>Id</u>. at 1324. This right is also implicated where the government's evidence, in itself, tends to make the defendant's acts appear unusual or suspicious, when in fact they are part of a normal, even accepted, routine. <u>See</u> <u>Sheffield</u>, 992 F.2d at 1170 ("Without this evidence of the gift making custom, production of fishing lure molds on a U.S. Air Force Base must have seemed to the jury like the oddball project of a renegade fisherman. . . . [T]his defendant should be allowed to present the gift-making evidence to put his actions in context . . . .").

The right to place the government's evidence in context is not unlimited, however. In <u>United States v. Funches</u>, we affirmed a conviction despite the fact that some contextual evidence was excluded because "[h]ad the jury heard [the excluded evidence], the jury nonetheless would have lacked a reason in law not to convict." 135 F.3d 1405, 1408 (11th Cir. 1998). Consequently, evidence introduced to "complete" a potentially misleading story offered by the government is pertinent only when it might color a jury's assessment of the material facts of the case.

In this case, Felser's testimony was not necessary to correct any misleading impressions that may have been created by the government's evidence. As discussed earlier, because neither Felser nor anyone else can testify that Hurn was aware of this doctrine, his testimony cannot be woven into a larger defense narrative. Moreover, none of the government's evidence focused on whether or not Hurn's benefits would actually have been reduced had she truthfully reported her income from painting. Consequently, she cannot argue that the government was unfairly attempting to use this collateral matter to her disadvantage.

In short, there is no theory under which Hurn's constitutional rights were violated by the exclusion of this evidence. Further undermining Hurn's argument on this point is the fact that the district court offered to instruct the jury on the "concurrent dissimilar employment" doctrine as a matter of law, but Hurn declined. Since this theory was the only matter to which Felser was going to testify, the district court's offer precluded any need for him to be called as a witness. By making this offer, the district court rendered any error in excluding Felser irrelevant. See United States v. Buckley, 586 F.2d 498, 503 (5th Cir. 1978) (rejecting Sixth Amendment challenge to district court's exclusion of certain testimony due to lack of prejudice because other evidence concerning those facts was brought before the jury);

18

IV.

The defendant's final claim is that the evidence was not sufficient to prove

Counts II and III of the indictment. These counts claimed that Hurn had perjured

herself by failing to report income from a "business enterprise" on the 1032

Forms. Hurn argues on appeal that painting was a hobby; the fact that she

occasionally sold a few paintings informally for a few hundred dollars did not

make her art an enterprise. We are quite sympathetic to this argument, and might

be inclined to reverse her convictions on these counts had this argument been

raised at trial. As the government points out in its brief, however, Hurn failed to

move at trial for a directed verdict of acquittal on this basis. Consequently, we

review this conviction only for plain error. See United States v. Hunerlach, 197

F.3d 1059, 1068 (11th Cir. 1999) ("Since the record does not show that Appellant

raised this issue to the district court, our review of the district court's decision to

deny the motion for judgment of acquittal on that basis is only for 'plain error.'").[4]

_____

[4] Had this been a bench trial, a motion for acquittal would not have been necessary to preserve Hurn's "sufficiency of the evidence" argument for appeal. See Hall v. United States, 286 F.2d 676, 677 (5th Cir. 1960) ("[T]here can be little or no need for a formal motion for a judgment of acquittal in a criminal case tried to a court without a jury upon the defendant's plea of not guilty. The plea of not guilty asks the court for a judgment of acquittal . . . .").

19

To obtain a reversal under the plain error standard, a defendant must demonstrate, among other things, not only that the error violated her substantial rights (which this error arguably did), but that it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993) (quotation marks and citation omitted; alteration in original). While the indictment alleged specifically that she lied about her income from "business enterprises," the form she filled out actually asked about income from a much broader range of sources.

A reasonable jury would have been fully justified in concluding that Hurn affirmatively lied on her forms, thus violating § 1920, even though her conduct did not actually fall within the narrow confines of the indictment. The forms asked whether she was "self-employed or involved in any business enterprise in the past 15 months." Moreover, they expressly directed her to "[r]eport ALL self-employment or involvement in business enterprises." The forms further specified that the employment to which they were referring "include[d] but [was] not limited to . . . providing services in exchange for money, goods, or other services. The kinds of services which you must report include . . . painting, contracting, child care, odd jobs, etc." Finally, the forms specifically stated, "Even if your activities were part-time or intermittent, you must report them." Upholding Hurn's

20

conviction for lying on this form is hardly unfair; to the contrary, allowing her to escape punishment on a minor technicality in the indictment would be unjust.

The defendant's convictions are

AFFIRMED.