[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14757
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cr-00004-ACC-PRL-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOYD WALLACE HIGGINBOTHAM, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 19, 2014)

Before ED CARNES, Chief Judge, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Boyd Wallace Higginbotham, Jr., appeals his first-degree murder conviction for stabbing to death a fellow inmate while incarcerated at a federal prison, in violation of 18 U.S.C. § 1111. He argues that the district court violated his constitutional right to present a complete defense at trial when it excluded from evidence (1) the victim's medical records, which showed that he had a history of mental illness and had stopped taking his prescribed medication a week before Higginbotham attacked him, and (2) testimony from a prison doctor concerning how the victim's behavior might have been affected by his refusal to take his medication.

## I.

In 2008 Higginbotham and the victim, Steven Pritchard, were serving prison sentences at United States Penitentiary II of the Coleman Federal Correctional Complex (Coleman).[1] On February 20, 2008, Higginbotham attacked Pritchard with a knife in the Coleman mess hall. The assault was recorded by a surveillance video, which was played at Higginbotham's murder trial. The recording showed Higginbotham entering the mess hall for lunch and sitting down with a group of inmates several minutes before Pritchard entered the room and sat down near him at the same table. Less than two minutes later, Higginbotham left the table, bused his tray, and circled back to the table where Pritchard was still eating. He walked

---

[1] Higginbotham was serving a 210-month sentence for being a convicted felon in possession of a firearm.

2

up behind Pritchard, wrapped one arm around his neck to lift him off his seat, and stabbed him repeatedly in the back, chest, forearm, and abdomen.  The two men fell to the floor in a struggle.  After a few seconds, Higginbotham stood up, kicked Pritchard in the head, and walked away, leaving behind a 9-inch blade at the crime scene.  Pritchard died 15 days later from his wounds.

Higginbotham's theory of defense at trial was that he had acted out of necessity and self-defense.  He claimed that he had gotten into two verbal altercations with Pritchard the morning of the stabbing.  The first argument arose when Higginbotham went to Pritchard's cell to retrieve some tattoo patterns that belonged to him.  Pritchard refused to return the patterns, became angry, and called Higginbotham derogatory names.  Higginbotham left Pritchard's cell, apparently because he was afraid.  The second argument arose about an hour later when Pritchard went to Higginbotham's cell seeking to purchase some alcohol from him on credit.  Higginbotham refused to sell him the alcohol, and Pritchard again became angry and called Higginbotham offensive names.  Before leaving, Pritchard pounded on the door to Higginbotham's cell and threatened to "kick his ass" and "stick him."  Higginbotham believed that Pritchard was threatening to stab him when he said he would "stick him."

In support of Higginbotham's defense theory, four inmates testified that Pritchard was drunk and had been behaving erratically and hostilely toward

3

Higginbotham on the day of the stabbing. Those four witnesses said that Pritchard called Higginbotham several derogatory names at the lunch table, such as "punk" and "bitch," and that he also told other inmates at the table that he was going to stab Higginbotham later that day when they got back to the housing unit.

In addition to those four inmates, Higginbotham called as a witness Dr. Ivan Negron, the regional medical director for the Bureau of Prisons (BOP), intending to rely on Dr. Negron to show that Pritchard had a mental health condition that led him to act aggressively toward Higginbotham. Through Dr. Negron, Higginbotham sought to introduce into evidence portions of Pritchard's BOP medical file, which included records from 1998, 2004 through 2006, and 2008. The government objected to the admission of those records, arguing that they were not relevant because they addressed Pritchard's mental health at times long before the stabbing. The court sustained that objection and the medical records were not admitted. Higginbotham also elicited from Dr. Negron testimony about how several days before the stabbing Pritchard had stopped taking the medication prescribed for his mental health problem.[2] When Higginbotham asked Dr. Negron how a person taking these medications might be affected by going off the drugs, the government objected on relevance grounds, arguing that the question called for

---

[2] Dr. Negron's statements corroborated earlier testimony from William Bechtold, the warden at Coleman, who stated that Pritchard had been diagnosed with "some sort of mental illness" and had stopped taking his medication about a week before the stabbing.

speculation as to how discontinuing use of the medication might have affected Pritchard's behavior.  The district court sustained that objection as well.

During closing arguments, Higginbotham argued that he had attacked Pritchard out of necessity and in self-defense.  He specifically stated that "[e]verything that [] happen[ed] was brought [] by Mr. Pritchard's intoxication, by Mr. Pritchard's aggressiveness, and by an inmate being called out in front of other inmates."  The district court instructed the jury on the affirmative defenses of necessity and self-defense.  Those affirmative defenses included a duty to retreat, if possible to do so safely, and a requirement that any threat of death or serious harm be imminent before resorting to deadly force.  The jury convicted Higginbotham of first-degree murder, and he was sentenced to a term of life imprisonment, running consecutively to his original sentence.

## II.

On appeal, Higginbotham argues only that the district court prevented him from presenting a complete defense when it refused to admit Pritchard's BOP medical records into evidence and prevented Dr. Negron from testifying about the possible consequences of Pritchard's refusal to take his prescribed medication.  He contends that the excluded evidence was necessary to corroborate the testimony of the four inmates who testified that Pritchard was acting erratically and aggressively toward Higginbotham on the day of the stabbing.  We review only for an abuse of

5

discretion.  United States v. Lyons, 403 F.3d 1248, 1250 (11th Cir. 2005); see also United States v. Wilk, 572 F.3d 1229, 1234 (11th Cir. 2009) ("We review evidentiary rulings for abuse of discretion.").

Criminal defendants have a constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense.  United States v. Frazier, 387 F.3d 1244, 1271 (11th Cir. 2004) ("[T]he right of the accused to assert a complete defense is well established . . . ."); United States v. Hurn, 368 F.3d 1359, 1362 (11th Cir. 2004).  However, there are limits on that right, and a district court may exclude evidence that is "repetitive, only marginally relevant, [or that] poses an undue risk of harassment, prejudice, or confusion of the issues."  Holmes v. South Carolina, 547 U.S. 319, 326–27, 126 S.Ct. 1727, 1732 (2006) (quotations and alteration omitted); accord Frazier, 387 F.3d at 1272 ("These bedrock principles establish that, while a criminal defendant must be given every meaningful opportunity to present a complete defense, in doing so he must comply with the procedural and evidentiary rules designed to facilitate a search for the truth."); Fed. R. Evid. 403 (providing that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence").

In this case, the district court did not abuse its discretion when it excluded from evidence Pritchard's BOP medical records and Dr. Negron's testimony about the possible consequences of Pritchard refusing to take his medication. There was no abuse of discretion because the cause of Pritchard's aggressive behavior was not critical to Higginbotham's ability to establish the affirmative defenses of necessity and self-defense. See Wilk, 572 F.3d at 1235 (observing that evidence that a police officer had steroids in his blood at the time he was shot was not "crucial or necessary to [the defendant's] establishment of a valid defense"). Even if it had been critical for Higginbotham to establish that Pritchard had mental health problems that may have caused his aggressiveness, the jury was presented with other evidence supporting that point. Dr. Negron and Warden Bechtold both testified that Pritchard had a mental health condition for which he had been taking medication, and they also testified that he had stopped taking his medication several days before Higginbotham attacked him.

Higginbotham also contends that the excluded evidence was necessary to corroborate the testimony of the four inmates who stated that Pritchard was acting aggressively toward him at lunch on the day of the stabbing. That argument is unconvincing. Higginbotham presented substantial evidence concerning Pritchard's behavior on the day of the stabbing. With four witnesses testifying about Pritchard's aggression, additional corroboration was not necessary to present

a complete defense.  See Wilk, 572 F.3d at 1235 (rejecting defendant's argument that he was prevented from establishing his self-defense claim when the district court excluded evidence that the police officer he had killed had steroids in his blood at the time he was shot, which the defendant sought to introduce to "corroborate[] his testimony that the officers acted like armed home invaders instead of police officers"); see also Holmes, 547 U.S. at 326–27, 126 S.Ct. at 1732 (noting that a district court may properly exclude evidence that is repetitive or only marginally relevant); United States v. Thomas, 62 F.3d 1332, 1342 (11th Cir. 1995) (concluding that cumulative evidence was properly excluded).

Higginbotham has not carried his burden of showing that the district court's evidentiary rulings were an abuse of discretion or that they deprived him of a meaningful opportunity to present a complete defense.

**AFFIRMED.**