[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 12, 2011
JOHN LEY
CLERK

No. 10-14489
Non-Argument Calendar

_____

D.C. Docket No. 9:09-cr-80141-KLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KATRINA BERKMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 12, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

A Southern District of Florida jury convicted Katrina Berkman on five counts of bank fraud,[1] Counts 1-5, access device fraud,[2] Count 6, fraudulent activity with an access device,[3] Count 7, and aggravated identity theft, Count 8, and the district court sentenced her to concurrent prison terms of 33 months on Counts 1-7, and a consecutive 24 months' term on Count 8, for a total term of imprisonment of 57 months. Berkman now appeals her convictions and sentences.

Berkman was the head bookkeeper at the accounting firm of Berkman, Jorgensen, Masters & Stafman ("BJ M&S") in Pompano Beach, Florida. One of her clients was Donna Manzella, the owner of a chiropractic and massage business called Back 2 Back Wellness Centre ("B2B"). Between March 2005 and March 2007, she caused the electronic transfer of approximately $175,000 from B2B's account at Sun Trust Bank to various accounts, including accounts she and her former husband, Andrew Kaniclides, had with American Express. Five of the transfers are the subjects of Counts 1-5. Another BJM&S client was Phillip Schuman (an elderly man who, at the time of Berkman's trial was incapacitated

---

[1] 18 U.S.C. § 1344.

[2] 18 U.S.C. § 1029(a)(2).

[3] 18 U.S.C. § 1029(a)(2) and (b)(1).

and could not testify).  Berkman obtained Schuman's Bank of America account number, and during April 2007 (after being cut off from the B2B account), she made a series of electronic transfers to her and Kaniclides's American Express accounts totaling approximately $164,000.  Berkman's activity with Schuman's account is the subject of Counts 7 and 8.

Berkman presents several arguments in challenging her convictions.  First, she challenges the district court's refusal to sever Counts 7 and 8 from the rest of the charges.  Second, she objects to a number of hearsay statements admitted at trial.  Third, she argues that the exclusion of a particular document from evidence violated her right to present evidence in her defense and to effectively cross-examine the witnesses against her.  Fourth, she argues that the Government's proof was insufficient to support her convictions on Counts 7 and 8.  Finally, in challenging her sentences, she contends that the district court's use of the Sentencing Guidelines abuse-of-trust enhancement was unwarranted because she did not enjoy a position of trust beyond what is inherent in every fraud scenario.  We find no merit in any of Berkman's challenges and therefore affirm.

I.

Berkman first argues that the district court abused its discretion by refusing to sever Counts 7 and 8 from the indictment, thereby forcing her to choose

between testifying as to all eight counts or not testifying at all. She contends that her disbelieved testimony provided the Government with its strongest evidence on Counts 7 and 8, and that the Government would not have been able to secure convictions on those counts if she were allowed to limit her testimony to Counts 1 through 6. Further, she argues that because Schuman was unavailable to testify, the Government was able to introduce unreliable hearsay statements relating to Counts 7 through 8 that undermined her defense on Counts 1 through 6.

When a defendant is charged in a multi-count indictment, the district court can sever the joined counts into separate trials in order to prevent prejudice to the defendant. Fed. R. Crim. P. 14. A district court's denial of a motion to sever an indictment is reviewed for an abuse of discretion. *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). The denial of a severance motion will not be reversed unless the defendant suffered "compelling prejudice" as a result of the joinder. *Id.* at 1244.

Severance motions require the district court to balance the defendant's right to a fair trial against the public's interest in the efficient and economic administration of justice. *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005). Severance is not required simply because a defendant wishes to testify as to some counts but not as to others. *Hersh*, 297 F.3d at 1243 n.15. Rather, a

4

defendant must demonstrate that she has important testimony to give on one set of counts, and a strong need to refrain from testifying on the others. *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984). One important consideration in this analysis is whether severing the counts would achieve the exclusion that the defendant desires. *See United States v. Benz*, 740 F.2d 903, 912 (11th Cir. 1984) (explaining that severing the trials would not substantially limit the government's ability to introduce evidence or elicit testimony from the defendant). Notably, when a defendant testifies on her own behalf, she waives the Fifth Amendment privilege to refuse to answer questions properly within the scope of cross-examination, which includes all matters "reasonably related" to her testimony on direct examination. *United States v. Pilcher*, 672 F.2d 875, 878 (11th Cir. 1982).

In this case, the district court did not abuse its discretion in denying Berkman's severance motion. In that motion, Berkman presented a cryptic explanation of her need to refrain from testifying on Counts 7 and 8, and thus failed to carry her burden of establishing the need for severance. Moreover, she failed to establish that she suffered "compelling prejudice" as a result of the denial, for severance would not have substantially limited the Government's ability to introduce evidence or elicit testimony from her.

II.

Berkman argues that the court improperly permitted Schuman's bookkeeper to testify that Schuman had been angry and upset following the discovery of the electronic transfers, and that he had directed the bookkeeper to call the bank and dispute the charges. For one, she contends that the statements were "testimonial" for purposes of the Confrontation Clause because they were made during the bookkeeper's effort to gather evidence of criminal activity. She further argues that even if the statements were "nontestimonial," they were still inadmissible under the Federal Rules of Evidence because they did not fall under any of the hearsay exceptions.

A district court's evidentiary rulings are ordinarily reviewed for an abuse of discretion, while rulings on the specific issue of whether hearsay statements are testimonial for purposes of the Sixth Amendment's Confrontation Clause are reviewed *de novo*. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010).

For purposes of both the Confrontation Clause and the Federal Rules of Evidence, hearsay statements are defined as out-of-court statements offered to prove the truth of the matter asserted. *See United States v. Gari*, 572 F.3d 1352, 1361 n.7 (11th Cir. 2009). Nonverbal conduct may qualify as a hearsay statement

6

if the declarant intended the conduct "as an assertion."  Fed. R. Evid. 801(a); *see also United States v. Lamons*, 532 F.3d 1251, 1263 (11th Cir. 2008) (citing Rule 801(a) in analyzing a Confrontation Clause issue).

The Confrontation Clause bars the admission of "testimonial" hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).  Hearsay statements are testimonial when "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  *Crawford*, 541 U.S. at 52, 124 S.Ct. at 1364.  Formal statements given during the course of police interrogations are "*definitively* testimonial."  *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005) (quotations omitted, emphasis in original).  By contrast, statements made in private conversation are generally nontestimonial because there is no reason to believe that the statements will be used at trial.  *See United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1209 (11th Cir. 2009).  Accordingly, such statements are not subject to the requirements of the Confrontation Clause.

Even if the Confrontation Clause does not apply, hearsay statements are inadmissable unless they fall within one of the exceptions enumerated in the

7

Federal Rules of Evidence. *Gari*, 572 F.3d at 1361 n.7. Rule 803(2) creates an exception for statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). The excited utterance exception does not require that the statement be made contemporaneously with the startling event. *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010). Rather, in ruling on the exception, we should consider the totality of the circumstances to determine if the declarant was still under the stress or excitement of the startling event at the time the statement was made. *Id.*

Berkman did not specifically object below to the introduction of the hearsay testimony on Confrontation Clause grounds, and her constitutional challenge may therefore be reviewable for plain error only. *See United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005). The challenge fails under any standard, however, because statements Schuman uttered were made in a private conversation with the purpose of correcting an ongoing threat to the security of his checking account, not with the purpose of creating evidence for trial. Therefore, the statements were nontestimonial and were not subject to the requirements of the Confrontation Clause.

Further, his statements also fell under the excited utterance exception to the hearsay rule. The primary statement at issue—Schuman's directive that the bookkeeper call the bank to dispute the charges—was made after Schuman had been informed that there had been a $100,000 electronic transfer out of his account. Given the evidence that Schuman never made nor allowed his employees to make electronic transfers, the receipt of that information was sufficiently "startling" to trigger the exception. Moreover, the evidence supports the court's finding that he was still under the stress of the startling event at the time of the disputed statement. Finally, the bookkeeper's testimony that Schuman seemed angry and upset was properly admitted because a person's general demeanor does not constitute a "statement" for hearsay purposes.

## III.

Berkman argues that the district court violated her Fifth and Sixth Amendment rights by prohibiting her from cross-examining a Government rebuttal witness about whether Donna Manzella filed for divorce a 2009, and by excluding the introduction of the divorce petition. Berkman contends that evidence of the pending divorce would have substantially bolstered her claim that she was authorized to make electronic transfers out of the B2B bank account as part of a scheme to hide money from the Manzella's husband.

9

The Sixth Amendment's confrontation right includes the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). Thus, a district court must allow sufficient cross-examination for the jury to adequately assess a government witness's credibility. *United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir. 1992). Moreover, the Sixth Amendment guarantees defendants the right to a "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Implicit in this right—as well as in the Fifth Amendment right to due process—is the idea that criminal defendants must be afforded the opportunity to present evidence in their favor. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). In assessing a defendant's claims under the Fifth and Sixth Amendments to call witnesses in defense, we engage in a two-step analysis. *Id.* at 1362. We first examine whether the defendant's rights were violated, and then, if necessary, determine whether the error was "harmless beyond a reasonable doubt." *Id.* at 1362-63.

The exclusion of a defendant's evidence violates the Fifth and Sixth Amendment where the evidence "pertains to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain." *Hurn*, 368 F.3d at 1363. By contrast, there is no constitutional violation where the

10

"proffered evidence does not bear a logical relationship to an element of the offense or an affirmative defense." *Id.* at 1366. "Moreover, a district court may exclude evidence where the relationship between the evidence and the element of the offense or affirmative defense at issue is simply too attenuated." *Id.*

Here, the district court did not abuse its discretion by excluding the divorce petition from evidence. First, the issue of whether or not Manzella was seeking a divorce in 2009 was not relevant to the rebuttal witness's credibility, since the witness testified only as to Manzella's business relationship with her husband between 2005 and 2007. Accordingly, the exclusion of the petition did not violate Berkman's confrontation rights.

As to Berkman's right to present evidence, the district court could have reasonably concluded that the petition was not sufficiently related to Berkman's authorization defense. The fact that Manzella filed for divorce in 2009 had little bearing on the question of whether the account discrepancies cited by the Government were actually made with her consent, and were part of an elaborate scheme to defraud her husband in 2006 and 2007. Accordingly, the exclusion of the petition on relevancy grounds was constitutionally permissible.

IV.

11

Berkman argues that the Government's proof was insufficient to support her convictions on Counts 7 and 8—the counts relating to Schuman. Specifically, she argues that the Government failed to negate her contention that Schuman offered her a loan and then authorized her to withdraw funds from his account.

We review insufficient-evidence claims *de novo*, viewing the evidence in the light "most favorable to the verdict . . . [and making] all inferences and credibility determinations in favor of the verdict." *United States v. Chirino-Alvarez*, 615 F.3d 1344, 1346 (11th Cir. 2010). To prevail on an insufficient-evidence claim, the defendant must establish that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A defendant's testimony, if disbelieved by the jury, may be considered as substantive evidence of guilt. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). However, the defendant's disbelieved testimony may not be the sole basis supporting a conviction beyond a reasonable doubt. *United States v. McCarrick*, 294 F.3d 1286, 1293 (11th Cir. 2002).

To convict a defendant for access device fraud, in violation of 18 U.S.C. § 1029(a)(2), the Government had to prove that Berkman: (1) knowingly used an unauthorized access device; (2) with the intent to defraud; (3) to obtain anything

12

having an aggregate value of $1,000 or more over the course of a one-year period. *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005). Further, the Government had to show that the use of the access device affected interstate commerce. *Id.* The term "access device" includes account numbers, electronic serial numbers, and personal identification numbers. 18 U.S.C. § 1029(e)(1).

To support a conviction for aggravated identity theft under 18 U.S.C. § 1028A(a)(1), the Government had to prove that Berkman: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to certain qualifying felonies. 18 U.S.C. § 1028A(a)(1). The term "means of identification" includes all access devices listed in § 1029(e), including bank-account numbers. *See* § 1028(d)(7)(A)(D). Moreover, the crime of access device fraud is a qualifying felony for purposes of the identity-theft statute. *See* § 1028A(c)(4).

Berkman's convictions are supported by sufficient evidence. As to Count 7, the only disputed element of the offense was whether Schuman authorized the electronic transfers from his account. The Government introduced overwhelming evidence to establish the lack of authorization, including: (1) bank statements showing that Schuman was reimbursed for the transfers; (2) testimony that he had never previously made or authorized an employee to make an electronic transfer;

13

and (3) testimony that he paid a $300 reward for the discovery of the transfers. Further, the evidence was also sufficient to support the identity-theft offense charged in Count 8, because the act of making an unauthorized electronic transfer required misappropriating Schuman's bank-account number.

V.

Berkman argues that the two-level enhancement of her base offense level under U.S.S.G. § 3B1.3 was not warranted because the Government failed to establish that she enjoyed a position of trust beyond what is inherent in every fraud scenario. Specifically, she asserts that the mere fact that she was friends with Manzella was not sufficient to establish a relationship of special trust.

We review *de novo* the district court's conclusion that the defendant's conduct justifies an abuse-of-trust enhancement. *United States v. Garrison*, 133 F.3d 831, 837 (11th Cir. 1998). The two-level enhancement under § 3B1.3 applies where the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. "[T]he primary concern of § 3B1.3 is to penalize defendants who take advantage of a position that provides them freedom to commit or conceal a difficult-to-detect wrong," *Garrison*, 133 F.3d at 838 (quotations and alterations omitted).

14

There is a component of misplaced trust inherent in the context of fraud, and we have cautioned sentencing courts not to be "overly broad" in imposing the abuse-of-trust enhancement on fraud defendants. *United States v. Ghertler*, 605 F.3d 1256, 1263 (11th Cir. 2010). Nevertheless, the abuse-of-trust enhancement applies to fraud defendants at least "where a fiduciary or personal trust relationship exists with other entities, and the defendant takes advantage of the relationship to perpetrate or conceal the offense." *See United States v. Hall*, 349 F.3d 1320, 1324 (11th Cir. 2003).

The district court properly applied the abuse-of-trust enhancement based on Berkman's exploitation of her friendship and professional relationship with Manzella. While all bookkeepers are entrusted with sensitive banking information, the evidence in this case suggests that Berkman enjoyed an unusually low level of supervision in managing the B2B bank account. This low level of supervision enabled her both to commit the offense and to conceal it for a substantial period of time.

For the foregoing reasons, Berkman's convictions and sentences are AFFIRMED.