[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13731
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 26, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:11-cr-00039-WHA-TFM-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BRADLEY HOWARD PEMBERTON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 26, 2012)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Bradley Howard Pemberton appeals his 48-month total sentence, imposed at the low end of the guideline range, after being found guilty by a jury for one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). On appeal, Pemberton argues that the district court (1) violated his Fifth and Sixth Amendment rights when it ruled that his mother could not testify to corroborate his alibi as it related to a collateral matter and (2) erred in applying a four-level sentencing enhancement for the amount of loss. After thorough review, we affirm Pemberton's conviction and sentence.

I

Pemberton, formerly a sergeant with the Montgomery Police Department, was indicted by a federal grand jury for wire fraud and identity theft. The indictment alleged that Pemberton used a police database—the Law Enforcement Tactical System (LETS)—to obtain personal identifying information about the victim, B.N.P.[1] It alleged that, using this information, Pemberton applied for a Discover credit card over the Internet using B.N.P.'s name, Social Security Number, and date of birth. The address listed, however, was that of Pemberton. It

---

[1]The victim was Bradley N. Pemberton, a distant relative of the defendant. For clarity, we refer to the victim as B.N.P.

further alleged that Pemberton used this Discover card to make payment on a fraudulently obtained American Express card via a balance transfer.

Prior to trial, Pemberton moved in limine to exclude evidence of applications he allegedly made using the victim's information for any credit card other than the Discover card for which he had been indicted. The Government responded that it had evidence that Pemberton used B.N.P.'s information to submit an American Express card application from 2006 and an Advanta card application from 2008. The Government argued that these prior acts were admissible under Federal Rule of Evidence 404(b), and the district court agreed, denying Pemberton's motion to exclude evidence of those applications.

At trial, the Government called U.S. Secret Service Special Agent Marcus Shumack to testify about his investigation of Pemberton. During Agent Shumack's testimony, the Government played for the jury a recording of the interview between Pemberton and two Secret Service agents. This interview contained questions about, and the agents' assertions regarding, the Discover, American Express, and Advanta cards and applications. On cross-examination, Pemberton introduced into evidence the Advanta card application, which did not include B.N.P.'s identifying information. The application also reflected that it was submitted from the Montgomery Police Department at approximately 8:00 p.m. on

July 15, 2008. Pemberton then presented documentary evidence that he left work at 3:00 p.m. that day and did not return. Agent Shumack responded that Pemberton could have reentered the police station without his entry being logged or recorded, though Shumack admitted that there existed no proof that Pemberton was at the station that evening.

Pemberton opted to testify in his own defense and denied having applied for any credit cards with B.N.P.'s information. He explained regarding the Advanta card that July 15 was his birthday, and that day he left work to spend time with his family, including his mother, and did not return to the station that evening. During this line of questioning, the Government objected that the Advanta card was irrelevant, as it was not at that time contending that Pemberton submitted that specific application. The district court did not sustain the objection but advised Pemberton to finish that line of questioning.

Pemberton next called his mother Rita to the stand to testify. When defense counsel began ask her questions about the July 15 Advanta application, the Government objected on the grounds that (1) Pemberton had introduced that application and (2) the Advanta application was irrelevant because the Government did not take the position that Pemberton had submitted it. Pemberton argued that he raised the subject of the Advanta application because it was

4

discussed in the video interrogation that was played for the jury. The district court sustained the objection because the Government was not taking the position that the Advanta application was relevant to the charges.

After thirty-nine minutes of deliberation, the jury returned a guilty verdict on both counts. Pemberton was sentenced to forty-eight months in prison. This sentence included a four-level enhancement under U.S.S.G. § 2B1.1(b)(1)(C) for an intended loss of $19,400, which represented the combined credit limit of the Discover and American Express cards. Pemberton now appeals the exclusion of his mother's testimony and the four-level enhancement for the intended loss amount.

II

Pemberton contends that the district court deprived him of his right to present evidence in his favor, in violation of the Fifth and Sixth Amendments. We typically review evidentiary rulings for an abuse of discretion. *United States v. Perez-Oliveros*, 479 F.3d 779, 783 (11th Cir. 2007). We review *de novo* whether the exclusion of evidence violated a defendant's constitutional rights. *United States v. Sarras*, 575 F.3d 1191, 1209 n.24 (11th Cir. 2009). When a defendant claims that exclusion of evidence violated his constitutional rights, we conduct a two-step analysis. *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004).

We first look to whether a constitutional guarantee was violated, and we second determine whether that error was harmless beyond a reasonable doubt. *Id.* at 1362–63.

A

"A criminal defendant's right to present witnesses in his own defense during a criminal trial lies at the core of the fifth and fourteenth amendment guarantees of due process." *United States v. Ramos*, 933 F.2d 968, 974 (11th Cir. 1991) (per curiam). Our decision in *Hurn* articulated four circumstances where exclusion of evidence may violate a defendant's constitutional rights:

> First, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense. Second, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain. Third, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness. Finally, a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently.

368 F.3d at 1363 (footnote omitted).

A thorough review of the record shows that the district court erred in

6

excluding Rita's testimony. Although the Advanta card application was a collateral matter, its submission tended to show Pemberton's intent to obtain the Discover card charged in the indictment.[2] *See United States v. Sheffield*, 992 F.2d 1164, 1170 (11th Cir. 1993) (finding error where the district court excluded evidence relevant to the defendant's state of mind). To obtain a conviction for wire fraud, the Government had to prove Pemberton's intent to participate in a scheme to defraud, *see* 18 U.S.C. § 1343, and that mens rea element was made more likely by the introduction of evidence that Pemberton had submitted the Advanta application on a prior occasion. Because the collateral Advanta application "bears a sufficiently close relationship to an element of the offense" charged, it was error to exclude it. *Hurn*, 368 F.3d at 1364.

Moreover, Rita's testimony would have called into question a portion of Agent Shumack's testimony "such that a reasonable jury might receive it differently." *Id.* at 1363. On cross-examination, Agent Shumack opined that Pemberton could have re-entered the Montgomery Police Department the night that the Advanta application was submitted, despite the absence of documentary evidence establishing his return. Pemberton sought to introduce Rita's testimony

---

[2]The Government took this position in response to Pemberton's motion in limine, explaining that it sought "to introduce the American Express and Advanta applications . . . to show [Pemberton's] intent to obtain the Discover card."

7

to undermine Agent Shumack's assertion and to confirm Pemberton's own story that he presented on the witness stand.[3]  We thus find that the evidence should have been admitted to counter the testimony of a Government witness.

The Government argues that Pemberton invited any error because the defense introduced the Advanta card application into evidence.  Although it is uncontested that Pemberton introduced the application into evidence, this contention ignores that the Government was the first party to discuss the Advanta card before the jury.  The video interview between Pemberton and the agents included accusations that Pemberton submitted the Advanta card, and the Government never contested the Advanta application's relevance while Agent Shumack was cross-examined about the circumstances surrounding its submission.  Because the Government introduced discussion of the Advanta application in the first instance through its video interview, the invited error doctrine does not apply.

B

We next turn to whether the error was harmless beyond a reasonable doubt.

---

[3]In a footnote of its brief, the Government states that we cannot properly consider what Rita's testimony would have been due to the absence of a factual proffer to the district court.  A proffer is not required, though, when the substance of the testimony is apparent from the context.  *See* Fed. R. Evid. 103(a)(2).  It is apparent that Rita's testimony would have been offered to confirm Pemberton's location at the time the Advanta application was submitted, given that (1) Pemberton testified he was with his mother at the time of that submission, (2) Pemberton called her to testify in his favor, and (3) the objected-to questioning focused on the Advanta card.

In assessing the impact of the erroneous exclusion of testimony here, we must decide "whether we have a reasonable doubt that the result in [Pemberton's] case would have been the same had he been able to call [Rita] to the stand as a witness on his behalf." *United States v. Hernandez*, 141 F.3d 1042, 1050 (11th Cir. 1998). In making that determination, we look to the avenues of inquiry and the probable impact of those questions on the ultimate outcome. *Id.* After reviewing the trial transcript and exhibits, we have no reasonable doubt that the jury would have convicted Pemberton even if his mother had presented testimony to undermine the allegation that he submitted the Advanta application.

The strongest evidence supporting Pemberton's conviction would have remained unaffected by Rita's testimony. The parties stipulated that the Discover card application was submitted from IP address 68.207.194.56, which originated in Elmore County, Alabama, where Pemberton lived. The Government presented evidence of Pemberton's LETS activity log,[4] which showed that an inquiry into the driver's license and Social Security number of B.N.P. originated from that same IP address just a short time before the Discover application was submitted. The Government also presented testimony from Agent Rob Stuart, who explained that (1) each officer sets his own LETS password; (2) the password must contain

---

[4]Pemberton's activity was tracked through his username, BP1043.

at least one number, one letter, and a special character; and (3) the password must be changed every sixty to ninety days. These safeguards helped the Government to establish that Pemberton was the individual who logged into LETS, which in turn implicates him in the submission of the fraudulent Discover card. None of this evidence would have been disturbed by testimony about the Advanta application.

Additionally, the intent that the jury could infer from the fraudulently obtained American Express card would not have been questioned by Rita's testimony. The scheme to defraud, as alleged in the indictment, implicated the American Express card but was unrelated to the Advanta credit card. Finally, the negative inferences the jury may have taken away from the mention of the Advanta application during the recorded interview were largely undermined by evidentiary submission of the application itself, which did not include the identifying information of B.N.P. or Pemberton. Overall, the error was not sufficient to create a reasonable doubt of Pemberton's guilt, and we affirm his conviction.

## III

We review the district court's amount-of-loss determination for clear error. *United States v. Nosrati-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001) (per

curiam). The government bears the burden of establishing the attributable loss by a preponderance of the evidence. *United States v. Dabbs*, 134 F.3d 1071, 1081 (11th Cir. 1998). A district court may consider a defendant's uncharged relevant conduct at sentencing, provided the Government proves the conduct by a preponderance of the evidence. *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006).

In calculating the loss, the general rule is that the loss is the greater of actual or intended loss. U.S.S.G. § 2B1.1 cmt. 3(A). The Guidelines commentary defines "actual loss" as the "reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* cmt. 3(A)(i). "Intended loss" is defined as the "pecuniary harm that was intended to result from the offense," including "intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* cmt. 3(A)(ii). We have previously held that "once a defendant has gained access to a certain credit line by fraudulently applying for credit cards, a district court does not err in determining the amount of the intended loss as the total line of credit to which [the d]efendant could have access." *Nosrati-Shamloo*, 255 F.3d at 1291.

The district court found that Pemberton fraudulently obtained the American Express card and that the American Express card was relevant because Pemberton transferred money between that and the Discover card. The court adopted the

11

undisputed findings of the probation officer regarding the credit limits, and the total intended loss was properly calculated to be $19,400. Because the court correctly calculated the intended loss amount in accordance with binding precedent, there is no clear error. Accordingly, we affirm Pemberton's sentence.

**AFFIRMED.**