[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11999
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cr-60109-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANK EXCEL MARLEY, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 9, 2015)

Before TJOFLAT, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Frank Excel Marley, III, appeals his jury convictions and 57-month total prison sentence for 1 count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349, and 6 counts of theft from an Indian tribe, in violation of 18 U.S.C. §§ 1163 and 2.  On appeal, he argues: (1) that the evidence was insufficient to prove that he acted knowingly and willfully; (2) that the district court's exclusion, as hearsay, of a memorandum he had written denied him the right to present an effective defense and rendered his trial unfair; (3) that the district court's loss calculation was erroneous; (4) that the evidence did not support an aggravated-role enhancement under U.S.S.G. § 3B1.1(c); (5) that the evidence did not support an abuse-of-trust enhancement under § 3B1.3; and (6) that the court's restitution order was erroneous.  We address each issue in turn.

(1)    Sufficiency of the evidence

Marley, an attorney who was retained by the Seminole Tribe of Florida ("the Tribe"), argues that the government failed to prove that he knew the invoices from his law firm, The Marley Firm, P.A. ("the Marley Firm"), contained fraudulent charges.  He asserts that the only evidence of his intent came from his codefendant, Maria Hassun, whose testimony was questionable in light of her plea agreement with the government.  He also argues that the government failed to

prove that he had not done sufficient work to justify the amount of money the Tribe paid him or that he intended to steal from the Tribe.

We review the denial of a defendant's motion for judgment of acquittal *de novo*. *United States v. Perez-Tosta*, 36 F.3d 1552, 1556 (11th Cir. 1994). The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime of which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). However, to uphold the denial of a motion for a judgment of acquittal, we need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt. *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001). Whether the evidence was direct or circumstantial, we will accept all reasonable inferences that tend to support the government's case. *See United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004).

A jury is free to choose among reasonable constructions of the evidence. *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). As such, "it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* (quotation and alteration omitted). We are bound by the

3

jury's credibility determinations and by its rejection of the inferences raised by the defendant. *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005). The fact that a witness has consistently lied in the past, engaged in various criminal activities, or thought his testimony would benefit him does not make his testimony incredible. *United States v. Thompson*, 422 F.3d 1285, 1291 (11th Cir. 2005). To be considered incredible as a matter of law, testimony "must be unbelievable on its face, i.e., testimony as to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." *Id.* (quotation and alteration omitted).

To commit mail fraud, in violation of 18 U.S.C. § 1341, or wire fraud in violation of 18 U.S.C. § 1343, the defendant must (1) intentionally participate in a scheme or artifice to defraud another of money or property, and (2) use or cause the use of the mails or wires for the purpose of executing the scheme or artifice. *United States v. Ward*, 486 F.3d 1212, 1221-22 (11th Cir. 2007). To commit a conspiracy offense under 18 U.S.C. § 1349, a defendant must know of and willfully join in the unlawful scheme to defraud. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009).

Under 18 U.S.C. § 1163, a defendant commits embezzlement or theft from an Indian tribe when he "embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of

4

the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization or intrusted to the custody or care of any officer, employee, or agent of an Indian tribal organization; or [] knowing any such moneys, funds, credits, goods, assets, or other property to have been so embezzled, stolen, converted, misapplied or permitted to be misapplied, receives, conceals, or retains the same with intent to convert it to his use or the use of another."  18 U.S.C. § 1163.

As an initial matter, Marley contests only the government's evidence of (i) his knowledge of and intent to join a conspiracy to defraud the Tribe by inflating the Marley Firm's bills, and (ii) his knowledge of the theft and his intent to steal from the Tribe.  *See Maxwell*, 579 F.3d at 1299; 18 U.S.C. § 1163.  At Marley's trial, Hassun, who was Marley's assistant, testified that Marley directed her to inflate the invoices she submitted to the Tribe; told her to "be creative" in doing so; asked her, on some occasions, to increase the invoices by a specific percentage; and, on other occasions, told her he needed a certain amount of money for the coming month.  She testified that she never made the decision as to what to bill or what not to bill and that she submitted the invoices to Marley for his approval before sending them out.  She further testified that Marley asked her to pick up the checks issued by the Tribe so she could promptly deposit them into the Marley Firm's bank account, which was often overdrawn, and that, sometimes, she

5

transferred funds from the Marley Firm's bank account to Marley's personal bank account to cover overdrafts in the latter account. In addition, an accountant for the Federal Bureau of Investigation ("FBI") testified that the Tribe's checks were deposited into the Marley Firm's accounts and that the Tribe was the source of over 90% of the funds in those accounts. This evidence was sufficient to establish that Marley knowingly and willfully joined the conspiracy and stole from the Tribe.

Marley's contention that Hassun's plea agreement rendered her testimony incredible is unavailing, because we are bound by the jury's credibility determinations, unless testimony is unbelievable on its face. *Peters*, 403 F.3d at 1268; *Thompson*, 422 F.3d at 1291. Marley does not argue that Hassun's testimony was facially unbelievable, nor does the record support such an argument.

Marley's contention that the government failed to prove that the fraudulent charges were not supported by his other, unbilled work is also unavailing. Defense counsel presented that argument to the jury by eliciting from the FBI's case agent during cross-examination that he had not investigated the entirety of Marley's work and whether all of that work had been included in the Marley Firm's invoices. In addition, in his closing argument, defense counsel maintained that a reasonable doubt existed as to whether Marley had performed sufficient work to justify the inflated bills, and he encouraged the jury to conclude that Marley

6

believed the money he received from the Tribe represented appropriate compensation for his work.  The jury declined to make that inference, and we are bound by the jury's rejection of inferences raised by the defense.  *See Peters*, 403 F.3d at 1268.

(2)    Hearsay ruling

Marley contends that the district court erred by excluding as hearsay a memorandum he wrote to the Tribe's general counsel, after a division of the Tribe had fired him, in which he listed the matters he handled during his eight-year relationship with the Tribe ("the closing memo").  He maintains that he did not offer the closing memo for the truth of its contents.  Instead, he says, he offered it to show that the government had not investigated the entirety of his work for the Tribe and to give the jury information about his state of mind with respect to the payments he received.  Additionally, citing *United States v. Hurn*, 368 F.3d 1359, 1363 (11th Cir. 2004), he maintains that, notwithstanding the Federal Rules of Evidence, the Constitution prohibits a court from excluding defense evidence that directly pertains to the elements of the charged offense or that tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently.[1]  He maintains that he offered the closing memo for both of these purposes.

---

[1] *Hurn* addressed a district court's decision to exclude evidence presented by the

We review constitutional issues *de novo*. *United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004). We review evidentiary rulings for abuse of discretion. *United States v. Wilk*, 572 F.3d 1229, 1234 (11th Cir. 2009). An abuse of discretion occurs if the district court applies an incorrect legal standard or makes findings of fact that are clearly erroneous. *Id.*

The Federal Rules of Evidence generally exclude hearsay from admissible evidence. Fed.R.Evid. 802. Hearsay is an out-of-court statement "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed.R.Evid. 801(c)(2). When the declarant intends to make an assertion that something is true, the hearsay rule applies whether the assertion is explicit or implicit. *See United States v. Groce*, 682 F.2d 1359, 1364 (11th Cir. 1982). In addition, evidence of the defendant's good conduct is not admissible to negate his criminal intent. *United States v. Ellisor*, 522 F.3d 1255, 1270-71 (11th Cir. 2008).

Here, the district court neither applied an incorrect legal standard nor made findings of fact that were clearly erroneous. *See Wilk*, 572 F.3d at 1234. In ruling on Marley's arguments, the court correctly noted that hearsay is admissible where it is not offered for the truth of the matter asserted. However, it found that "the memo was . . . clearly offered for the truth asserted therein," and that by introducing the memo during his cross-examination of the FBI case agent, defense

---

defendant, in the defense case. *Hurn*, 368 F.3d at 1362-63.

8

counsel was attempting to expose the jury to Marley's own self-serving statement without subjecting him to cross-examination, which was "not permitted by the Federal Rules of Evidence."

The court's factual findings were not clearly erroneous. Defense counsel's cross-examination of the FBI case agent focused on whether the case agent had investigated the full extent of Marley's legitimate work for the Tribe, which was precisely the topic of the closing memo. In addition, the memo, in which Marley attempted to justify his firm's fraudulent invoices by asserting that he had performed 40 hours of unbilled work monthly during his eight-year tenure, was not admissible to negate his intent to commit the crimes charged in the indictment. *See Groce*, 682 F.2d at 1364; *Ellisor*, 522 F.3d at 1270-71. While Marley asserts that he offered the memo to show his state of mind at the time he wrote it, that, too, was an impermissible hearsay use that depended on the truth of the memo's contents.

Marley's contention that, by excluding the closing memo as hearsay, the district court denied him the opportunity to rebut the government's evidence of his intent to defraud and steal from the Tribe, and to present the government's evidence in a different light, is misguided. *See Hurn*, 368 F.3d at 1363. While the court ruled that defense counsel could not introduce the memo for the purpose of cross-examining the FBI case agent, it did not categorically exclude the closing

9

memo from evidence.  Rather, it indicated that, if the defense wished to offer the memo, Marley would have to take the stand to lay a foundation for its contents; Marley declined to do so.

Moreover, Marley, who waived his rights to testify and to present evidence in his defense, had ample opportunity to contest the government's evidence of his intent and the adequacy of its investigation.  Defense counsel extensively cross-examined the FBI case agent about Marley's work for the Tribe, and the case agent repeatedly testified that his investigation did not determine whether Marley may have performed work that was not reflected in the Marley Firm's invoices.  And, as noted above, in his closing argument, defense counsel argued to the jury that the government's failure to investigate the extent of Marley's uncompensated work created a reasonable doubt as to his guilt.  Accordingly, the district court did not err in excluding the closing memo.

### (3)    Loss amount

Marley contends that the district court incorrectly calculated his loss amount by considering the face value of the checks the Tribe issued in payment for the Marley Firm's invoices, rather than only the fraudulent portion of each check.  Additionally, he maintains that the court erroneously failed to subtract the amounts of the unpaid January, February, and March 2011 invoices; $148,658 he alleges

Hassun stole from the Marley Firm in an independent fraud scheme; and $1,800,000 worth of his unbilled work for the Tribe.

With respect to Sentencing Guidelines issues, we review purely legal questions *de novo*, the district court's factual findings for clear error, and, in most cases, the district court's application of the Guidelines to the facts with due deference, which is tantamount to clear error review. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). We review the district court's loss calculation for clear error. *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999). To be clearly erroneous, a finding must leave us with a "definite and firm conviction that a mistake has been committed." *Rothenberg*, 610 F.3d at 624 (quotation omitted). A factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

Under U.S.S.G. § 2B1.1, if the loss amount is more than $400,000, but less than $1,000,000, a 14-point offense-level increase applies. U.S.S.G. § 2B1.1(b)(1)(H), (I). The commentary to § 2B1.1 provides that the loss shall be reduced by:

> The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or

11

(II) the time the defendant knew or reasonably should have known that the offense was detected by a victim or government agency.

*Id.* § 2B1.1, comment. (n.3(E)(i)).

Contrary to Marley's assertion, the district court's $996,605 loss calculation included only the fraudulent charges in the Marley Firm's bills. The court correctly denied Marley's request to subtract the amounts of the unpaid January, February, and March 2011 invoices, because the evidence showed that the Tribe discovered the fraud before it received the benefit of any legitimate services charged in those invoices. *See* U.S.S.G. § 2B1.1, comment. (n.3(E)(i)). Specifically, at trial, an advisor to the Tribe's chairman testified that, when she began working on the budget for the year 2010, she discovered information that later led the Tribe to detect the fraud. Additionally, the Tribe's director of finance testified that the Tribe did not pay the Marley Firm's January, February, and March 2011 invoices because it had discovered the fraudulent charges in the firm's earlier invoices. Moreover, at sentencing, defense counsel acknowledged that, while the Tribe did not officially fire Marley until March 2011, "there was suspicion [of the offenses] approximately six months earlier."

The court also correctly denied Marley's request to subtract the $148,658 Hassun allegedly stole from the Marley Firm. Any theft by Hassun from the Marley Firm was not relevant to the offenses for which Marley was convicted, of which the Tribe was the victim. Additionally, Hassun testified that the $148,658

12

she deposited into her bank account represented her salary, and, at sentencing, the court noted that it credited Hassun over Marley.

The court did not err in denying Marley's request to deduct the value of his alleged unbilled work, in that the evidence did not show that any such deduction was appropriate. Although Marley testified and pointed to his closing memo to support his contention that he had done $1,800,000 worth of unbilled work throughout his tenure with the Tribe, the court noted that it had "serious questions as to [] Marley's credibility." And, while two members of the Tribe testified that Marley had given them and other tribal members legal advice without billing them, Marley did not provide evidence, other than his own testimony, that the Tribe had agreed to pay him for the work he repeatedly failed to include in his bills. According, the district court's $996,605 loss calculation was not clearly erroneous.

(4)    Aggravated-role enhancement

Marley argues that he did not qualify for an aggravated-role enhancement under U.S.S.G. § 3B1.1(c) because, although he was the sole attorney at the Marley Firm, Hassun was responsible for preparing and submitting the invoices. He also maintains that, at a minimum, he and Hassun had a "co-equal relationship" with regard to the offenses, in that Marley called Hassun "Momma," Hassun had access to his computer, and she admitted that she altered the entries in his desk calendar to arrive at the inflated charges.

Under U.S.S.G. § 3B1.1(c), a two-point enhancement applies if the defendant was an organizer, leader, manager, or supervisor in any criminal activity that involved five or fewer participants and was not "otherwise extensive." *See* U.S.S.G. § 3B1.1(c). To qualify for the enhancement, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. *Id.* § 3B1.1, comment. (n.2).

Here, the district court found that Marley was an organizer, leader, manager, or supervisor of the offenses. This finding was supported by Hassun's testimony that she acted at Marley's direction in inflating and fabricating charges on the Marley Firm's invoices, that she never made the decision as to what to bill or what not to bill, and that she submitted the invoices to Marley for approval before sending them out. Accordingly, the court did not err in applying the § 3B1.1(c) enhancement.

### (5)    Abuse-of-trust enhancement

Marley argues that the evidence did not show that he used his position as an attorney to significantly facilitate his commission or concealment of the offenses. He asserts that the Marley Firm submitted its invoices to the Tribe's general counsel, who was capable of determining whether or not to authorize payment for them, and that the general counsel did not authorize payment based on any abuse of trust by him.

14

Under U.S.S.G. § 3B1.3 a two-point enhancement applies "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The commentary to § 3B1.3 instructs:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.

*Id.*, comment. (n.1). In addition, we have held that, for the enhancement to apply, the facts must demonstrate that (1) the defendant held a place of private or public trust, (2) he abused that position in a way that significantly facilitated the commission or concealment of the offenses, and (3) the victim conferred the trust. *United States v. Walker*, 490 F.3d 1282, 1300 (11th Cir. 2007).

Here, the district court concluded that the abuse-of-trust enhancement applied because the Tribe allowed Marley to exercise a significant amount of discretion with regard to his work and billing practices. *See Walker*, 490 F.3d at 1300; U.S.S.G. § 3B1.3, comment. (n.1). The court's conclusion was supported by the trial evidence. At trial, the Tribe's general counsel, who was blind and could not read without the help of his assistant, testified that he did not review the details of the Marley Firm's bills, or the bills of the third-party firms Marley hired, because he trusted that, as an attorney, Marley would be honest with him and bill

15

him correctly.  The trial evidence also showed that Marley used this discretion to commit and conceal his offenses by having the third-party firms submit their bills to him and inflating the charges in his firm's bills to the Tribe.  *See* U.S.S.G. § 3B1.3; *Walker*, 490 F.3d at 1300.  Accordingly, the district court did not err in applying the § 3B1.3 enhancement.

(6)     Restitution order

Marley contends that the district court erred by failing to deduct the value of his uncompensated work, including his unbilled work and the work billed in his January, February, and March 2011 invoices.  He maintains that not doing so resulted in a windfall for the Tribe.  He also maintains that the court erred by failing to deduct the $148,658 Hassun allegedly stole from the Marley Firm.

We review the legality of a restitution order *de novo* and the underlying factual findings for clear error.  *United States v. Baldwin*, 774 F.3d 711, 728 (11th Cir. 2014).  Under 18 U.S.C. § 3663A(c), a defendant convicted of fraud must pay restitution to the victim of his offenses.  *United States v. Moran*, 778 F.3d 942, 985 (11th Cir. 2015).  The government has the burden of proving the loss amount by a preponderance of the evidence.  *Id.*  Because restitution is intended to put the victim in the same position it would have been in had the crime never been committed, any value of the services or items received by the victim must be offset against the restitution order.  *Id*.

16

The district court's $996,605 restitution order was not erroneous. As discussed earlier, the trial evidence supported the court's $996,605 loss calculation, and the court did not err by failing to deduct the value of Marley's alleged, but unproven, unbilled work. Marley's contention that the court erred by failing to deduct the amounts of his January, February, and March 2011 invoices lacks merit. While, at sentencing, he contended that the Tribe owed him approximately $160,000 from those invoices, he offered no probative evidence to show that the invoices reflected $160,000 worth of legitimate work. His contention that the court erred by failing to deduct the $148,658 Hassun allegedly stole from the Marley Firm also lacks merit. As noted earlier, the alleged theft was not relevant to the loss amount in this case. In any event, Hassun was ordered to pay restitution in the amount of $148,658, and the district court ordered Marley to pay restitution jointly and severally with her.

Accordingly, for the reasons discussed above, Marley's convictions and sentences are **AFFIRMED**.

17